SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Kwabena Wadeer v. N.J. Mfrs. Ins. Co. (A-54-12) (072010)**

**Argued September 9, 2014 -- Decided February 18, 2014**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a plaintiff's claim alleging his insurer acted in bad faith by failing to settle his uninsured motorist (UM) claim is barred by the entire controversy doctrine or the doctrine of res judicata.

Plaintiff, Kwabena Wadeer, suffered injuries in a motor vehicle accident that occurred while he was attempting to avoid an unidentified vehicle. Plaintiff pursued a UM claim against New Jersey Manufacturers Insurance Company (NJM), with whom he had an insurance policy that provided $100,000 in UM and UIM coverage. NJM made no offers to attempt to settle plaintiff's UM claim and the parties proceeded to private arbitration pursuant to the terms of the insurance policy. The panel determined that plaintiff was 30% liable for the accident, the phantom vehicle was 70% liable, and plaintiff was entitled to a net award of $87,500. NJM rejected the $87,500 arbitration award and demanded a trial. By letter dated April 21, 2005, plaintiff's attorney acknowledged NJM's rejection of the arbitration award and notified NJM that he believed it was acting in bad faith by rejecting that award.

On April 28, 2005, plaintiff filed a complaint against NJM seeking UM benefits. Plaintiff's complaint made no explicit allegations of bad faith or breach of duties. After mandatory, non-binding arbitration resulted in a 50/50 liability finding and a net award of $162,500 to plaintiff, NJM again refused the award and opted for a jury trial. On April 7, 2006, pursuant to Rule 4:58-2, plaintiff submitted an Offer of Judgment to NJM in the amount of $95,000 and reiterated his belief that defendant's conduct was in bad faith. NJM rejected the offer and the case proceeded to trial. The jury determined that the phantom vehicle was 100% liable for the underlying accident and awarded plaintiff $210,000 for pain and suffering and $12,175 in lost wages. Plaintiff thereafter moved to enter judgment for the full amount of the verdict, notwithstanding the $100,000 policy limit, as well as for prejudgment interest on the verdict and attorneys' fees. During argument on the motion, plaintiff's counsel raised the issue of bad faith, contending that defendant was on notice of the claim. In response, NJM argued that plaintiff failed to plead bad faith in his complaint. The trial judge entered an order on September 17, 2007, reducing and molding the jury verdict to conform to the insurance policy limit of $100,000 and awarding plaintiff attorneys' fees and prejudgment interest. In his accompanying statement of reasons, the trial judge found that NJM's actions did not constitute bad faith because NJM had fairly debatable reasons for denying the benefits of the policy. Plaintiff and NJM filed cross-appeals. Plaintiff contended the trial court should not have molded the verdict to the policy limits because NJM acted in bad faith. The Appellate Division affirmed the trial judge's modified jury verdict, but reversed the award of attorneys' fees and expenses.

Subsequently, on July 8, 2009, plaintiff filed a separate complaint alleging that NJM breached its duty of good faith and fair dealing. Plaintiff asserted that NJM acted in bad faith by failing to make a settlement offer to plaintiff and by failing to settle the claim in a timely manner. NJM moved for summary judgment, arguing that plaintiff's complaint was barred by the entire controversy doctrine, res judicata, and/or collateral estoppel. On January 21, 2011, the trial judge granted NJM's motion for summary judgment, finding that the entire controversy doctrine barred plaintiff's bad faith claim. The trial judge also determined that the doctrine of res judicata applied. The Appellate Division affirmed on the basis of the entire controversy doctrine. This Court granted plaintiff's petition for certification. 213 N.J. 534 (2013).

**HELD**: Plaintiff's bad faith claim is barred in this action under the principle of res judicata because it was raised, fairly litigated, and determined by the trial court in the first litigation.

1. "[A]n insurance company owes a duty of good faith to its insured in processing a first-party claim." Pickett v. Lloyd's, 131 N.J. 457, 467 (1993). In order to make a showing of bad faith in a first-party claim based on a denial of benefits, "[a] plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." Id. at 473 (quoting Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980)). "Under the 'fairly debatable' standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim." Ibid. (pp. 14-15)

2. The entire controversy doctrine, codified in Rule 4:30A, "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009). In determining whether a subsequent claim should be barred under this doctrine, "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." DiTrolio v. Antiles, 142 N.J. 253, 267 (1995). Because a plaintiff should have "a fair and reasonable opportunity to have fully litigated that claim in the original action," the doctrine "does not apply to unknown or unaccrued claims." Id. at 274. Put simply, "[f]airness in the application of the entire controversy doctrine focuses on the litigation posture of the respective parties and whether all of their claims and defenses could be most soundly and appropriately litigated and disposed of in a single comprehensive adjudication." Id. at 277. (pp. 15-17)

3. Res judicata "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." Lubliner v. Bd. of Alcoholic Beverage Control, 33 N.J. 428, 435 (1960). Application of res judicata "requires substantially similar or identical causes of action and issues, parties, and relief sought," as well as a final judgment. Culver v. Ins. Co. of North America, 115 N.J. 451, 463 (1989). To decide if two causes of action are the same, the court must determine: "(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same." Id. at 461-62. In Culver, the Court applied the doctrine of res judicata to bar a second action filed by insureds against their insurer alleging misrepresentations and breach of fiduciary duties because, in a prior subrogation action with the insurer, the insureds filed a cross motion, which the trial court ruled upon, raising the same claims of misconduct, the same material facts that would be established with the same evidence, and seeking similar relief. Id. at 454, 462. Here, like in Culver, plaintiff raised his bad faith claim in the first action, and the trial court addressed and disposed of that claim in its September 17, 2007 order and statement of reasons. Plaintiff's second action involves the same alleged wrongs, the same theories of recovery (NJM's alleged breach of its duty of good faith and fair dealing, warranting both consequential and punitive damages), the same evidence (the "fact" that NJM refused to settle, "forcing" plaintiff to take his case to trial because its liability would not exceed the UM policy limit regardless of the verdict), and the same material facts as in the first litigation. Thus, res judicata bars plaintiff's bad faith claim from relitigation. (pp. 17-22)

4. Despite the Court's disposition of plaintiff's bad faith claim, it separately addresses the entire controversy doctrine. Because acts of first-party bad faith in the UM context can, and often will, continue throughout the course of the underlying proceedings, the nature of first-party bad faith claims warrants exemption from a harsh application of the entire controversy doctrine. Rather than forcing a plaintiff to amend the initial complaint to add and reflect each incident of bad faith, viewing bad faith claims as separate and distinct actions promotes judicial efficiency and economy. The Court refers this matter to the Civil Practice Committee to consider whether our court rules should be modified to permit an insured to bring a first-party bad faith claim against an insurer after resolution of an underlying, interrelated UM action. The Court also refers the Offer of Judgment Rule, Rule 4:58-2, to the Civil Practice Committee to recommend an amendment addressing issues that arise in applying that rule to a monetary judgment molded to the policy limits in a UM/UIM action. Finally, the Court refers Rule 4:42-9(a)(6) to the Civil Practice Committee to consider whether that rule should be extended to authorize a fee award to an insured who brings direct suit against his insurer to enforce any direct coverage, including UM/UIM coverage. (pp. 23-26)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER, JUSTICES ALBIN and SOLOMON, and JUDGE CUFF (temporarily**

**assigned) join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICES LaVECCHIA and PATTERSON did not participate.**

KWABENA WADEER and OFELIA
WADEER,

    Plaintiffs-Appellants,

        v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

    Defendant-Respondent.


    Argued September 9, 2014 – Decided February 18, 2015

    On certification to the Superior Court, Appellate Division.

    E. Drew Britcher and Donald A. Caminiti argued the cause for appellants (Britcher, Leone & Roth, attorneys for Kwabena Wadeer and Breslin and Breslin, attorneys for Ofelia Wadeer; Mr. Britcher, Mr. Caminiti, and Kristen B. Miller, on the brief).

    Daniel J. Pomeroy argued the cause for respondent (Pomeroy, Heller & Ley, attorneys; Mr. Pomeroy and Karen E. Heller, on the briefs).

    Amos Gern argued the cause for amicus curiae New Jersey Association for Justice (Starr, Gern, Davison & Rubin, attorneys; John J. Ratkowitz, on the brief).

    Hugh P. Francis argued the cause for amici curiae Insurance Council of New Jersey, Property Casualty Insurers Association of America, and National Association of Mutual Insurance Companies (Francis & Berry, attorneys; Mr. Francis and Joanna Huc, on the brief).

1

David F. Swerdlow submitted a brief on behalf of amicus curiae New Jersey Lawsuit Reform Alliance (Windels Marx Lane & Mittendorf, attorneys).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

The issue on appeal is whether a plaintiff's claim alleging his insurer acted in bad faith by failing to settle his uninsured motorist (UM) claim is barred by the entire controversy doctrine or the doctrine of res judicata.

Plaintiff[1], Kwabena Wadeer, suffered injuries as a result of a motor vehicle accident. At the time of the accident, plaintiff was insured under a policy issued by defendant, New Jersey Manufacturers Insurance Company (NJM). Plaintiff notified NJM of his UM claim and demanded that NJM pay its policy limits to settle his claim. NJM did not offer the full limits of its policy and made no offers to settle the UM claim. Rather, NJM rejected two arbitration awards, one within its policy limits and one in excess of its policy limits. NJM also rejected an offer of judgment submitted by plaintiff in the amount of $95,000, thereby forcing the action to proceed to trial.

After a jury verdict was rendered in plaintiff's favor in the amount of $255,175, the trial court molded the verdict to

---

[1] Ofelia Wadeer also filed a consortium claim in this case but plaintiff refers to Kwabena Wadeer.

NJM's $100,000 policy limits, added attorneys' fees, costs, and pre-judgment interest, and reduced the total amount to a judgment in favor of plaintiff.  Plaintiff and NJM filed cross-appeals.

Plaintiff contended the trial court should not have molded the verdict to NJM's policy limits because NJM had acted in bad faith.  Plaintiff further argued that "as a result of NJM's failure to act in good faith towards resolving [the] claim within their policy limits," NJM must be held accountable for both consequential damages as well as punitive damages to deter NJM from engaging in such conduct in the future.

The Appellate Division issued an unpublished opinion affirming the portion of the order that molded the verdict to the policy limits and reversing the portion of the order that awarded fees and expenses pursuant to the Offer of Judgment Rule, Rule 4:58-2.  The panel specifically rejected plaintiff's arguments disputing the trial court's molding of the verdict to the insurance policy limits following Taddei v. State Farm Indem. Co., 401 N.J. Super. 449 (App. Div. 2008), and affirmed the trial court's ruling finding an absence of bad faith on the part of NJM.  The Appellate Division held that application of Rule 4:58-2 is triggered by measuring the amount of the offer of judgment filed by plaintiff against the amount of the eventual judgment for compensatory damages entered by the court, not the

3

amount of the full damages verdict, and therefore plaintiff had not obtained a judgment in an amount sufficient to trigger the rule.

Thereafter, plaintiff filed a separate complaint against NJM alleging that NJM breached its duty of good faith and fair dealing by failing to make a settlement offer to plaintiff and to settle the claim in a timely manner. NJM moved for summary judgment, arguing that the claim was barred by the entire controversy doctrine, res judicata, and collateral estoppel. The trial court granted NJM's motion, determining that res judicata and the entire controversy doctrine barred plaintiff's bad faith claim.

Plaintiff appealed, arguing that his bad faith action did not ripen until the jury returned its verdict and that barring his bad faith action under the entire controversy doctrine was fundamentally unfair. The Appellate Division affirmed in an unpublished opinion, finding NJM's pretrial actions were sufficient to establish the basis for a bad faith claim, that plaintiff had a fair opportunity to assert and litigate his bad faith action, and that there was nothing unfair about requiring plaintiff to pursue the bad faith claim in the first trial, since he had threatened a bad faith claim before filing the UM action.

4

For the reasons set forth in this opinion, we affirm the judgment of the Appellate Division. Although we concur with the panel's ultimate conclusion that plaintiff's bad faith claim was barred, we find the principle of res judicata to be controlling, not the entire controversy doctrine, because plaintiff raised his bad faith claims during the first trial. However, we hereby refer to the Civil Practice Committee, for review and study the entire controversy doctrine, Rule 4:30A, to consider whether to allow first-party bad faith claims to be asserted and decided after resolution of an underlying, interrelated UM action. We refer the Offer of Judgment Rule, Rule 4:58-2, to determine whether in the UM (uninsured motorist)/UIM (underinsured motorist) context, application of the rule should be triggered by measuring the amount of the offer of judgment filed by the plaintiff against the full damages verdict, rather than against the molded judgment entered by the court. We also refer Rule 4:42-9(a)(6) which allows for counsel fees to be awarded "in an action upon a liability or indemnity policy of insurance, in favor of a successful claimant," but not with respect to first-party insurance claims such as UM/UIM, to determine whether Rule 4:42-9(a)(6) should be extended to authorize a fee award to an insured who brings direct suit against his insurer to enforce any direct coverage, including UM/UIM coverage.

I.

5

On August 15, 2003, plaintiff, Kwabena Wadeer, was injured in an automobile accident. According to the police report, plaintiff was cut off by an unidentified white minivan, causing plaintiff to cross a grass median and lose control of his car. Plaintiff's vehicle collided with an automobile and was subsequently hit by a tractor trailer. Plaintiff suffered several fractures to his leg as a result of the accident, and sustained approximately $12,000 in lost wages.

At the time of the accident, plaintiff and his wife, Ofelia Wadeer, were insured under a policy issued by defendant NJM. The policy insured plaintiffs with UM and UIM in the amount of $100,000. Because neither plaintiff, nor any other witness to the accident, could identify the vehicle that caused plaintiff to veer into the other side of the highway, he pursued a UM claim.

On October 8, 2003, plaintiff notified NJM of his UM claim, and, shortly thereafter, sent medical records to support that claim. NJM did not offer the full limits of the policy and made no offers to attempt to settle plaintiff's UM claim. The parties proceeded to private arbitration pursuant to the terms of the arbitration provision contained in the insurance policy.

On February 25, 2005, the parties appeared for arbitration before a panel of three UM arbitrators. The panel determined that plaintiff was 30% liable for the accident, and the phantom

6

vehicle was 70% liable.  As a result, the arbitrators found that plaintiff was entitled to a gross award of $125,000.  After reducing the award to account for plaintiff's comparative negligence, the arbitrators determined plaintiff was entitled to a net award of $87,500.

NJM rejected the $87,500 arbitration award, which was within the limits of its insurance policy, and demanded a trial. Plaintiff's attorney acknowledged NJM's rejection of the arbitration award by letter dated April 21, 2005, and notified NJM that he believed NJM was acting in bad faith by rejecting that award:

> This letter shall also confirm that during our telephone conversation on April 19, 2005 you advised that the arbitration award [was] so close to my client's policy  limits that New Jersey Manufacturers felt they would just [as soon] try this case without fear that they would ever have to pay more than the policy limits of $100,000.00.  It was apparent to me from our conversation that NJM feels they have nothing to lose by trying this case.  I feel this is bad faith by NJM and I am troubled by their approach, especially in a case where the defense arbitrator even agreed my client's damages are worth well in excess of the policy limits.

Thereafter, on April 28, 2005, plaintiff filed a four-count complaint against NJM seeking UM benefits.  Plaintiff's complaint made no explicit allegations against NJM regarding any purported bad faith or alleged breach of any duties by NJM to its insured.  Defendant filed an answer on June 21, 2005.  The

7

matter was thereafter submitted to mandatory, non-binding arbitration pursuant to Rule 4:21A, which resulted in a 50/50 liability finding, and a net award of $162,500 to plaintiff on a gross award of $325,000. NJM again refused the award and opted for a jury trial.

On April 7, 2006, pursuant to Rule 4:58-2, plaintiff submitted an Offer of Judgment to NJM in the amount of $95,000, reiterated his belief that defendant's conduct was in bad faith and warned that, if the case proceeded to trial, plaintiff would pursue the full amount of a jury verdict even if it was in excess of the UM policy limits. NJM rejected this offer and the case proceeded to trial.

A jury trial was conducted from July 16, 2007 through July 18, 2007. At the conclusion of trial, the jury determined that the phantom vehicle was 100% liable for the underlying accident. The jury awarded plaintiff $210,000 for pain and suffering and $12,175 in lost wages. The jury also awarded plaintiff's wife $33,000 in damages for her consortium claim. Plaintiff thereafter moved to enter judgment for the full amount of the verdict, notwithstanding the $100,000 policy limit, as well as for prejudgment interest on the verdict in the amount of $27,278.23, and attorneys' fees of $93,586.51.

Oral argument for that motion was held on September 7, 2007. During argument, plaintiff's counsel raised the issue of

bad faith, contending that defendant was on notice of the claim. In response, counsel for NJM argued, among other things, that plaintiff failed to plead bad faith in his complaint.

By order entered September 17, 2007, the trial judge reduced and modified the jury verdict to conform to the insurance policy limit of $100,000. The judge also awarded plaintiff attorneys' fees and prejudgment interest. In his accompanying statement of reasons, the trial judge noted that NJM's actions did not constitute bad faith because NJM had fairly debatable reasons for denying the benefits of the policy.

On March 31, 2008, the trial judge issued a Final Order Entering Judgment that reaffirmed his September 17, 2007 order. The March 31, 2008 order (1) molded the jury verdict to conform with the $100,000 policy limit; (2) awarded $93,586.51 to plaintiff for attorneys' and court fees pursuant to the Offer of Judgment Rule, Rule 4:58-2, (3) awarded $15,652 in prejudgment interest; and (4) denied plaintiff's motion for reconsideration.

Plaintiff and NJM filed cross-appeals. Plaintiff contended the trial court should not have molded the verdict to NJM's policy limits because NJM had acted in bad faith. The Appellate Division concurred with the trial judge's modified jury verdict, but reversed the award of attorneys' fees and expenses (Wadeer I).

Subsequently, on July 8, 2009, plaintiff filed a complaint in the Superior Court, Law Division, alleging that NJM breached its duty of good faith and fair dealing, as well as the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -195, and the Unfair Claims Settlement Practices Act, N.J.S.A. 17:29B-1 to -19. As a factual basis for those contentions, plaintiff asserted that NJM acted in bad faith by failing to make a settlement offer to plaintiff and by failing to settle the claim in a timely manner. NJM moved for summary judgment, arguing that plaintiff's complaint was barred by the entire controversy doctrine, res judicata, and/or collateral estoppel.

On January 21, 2011, the trial judge granted NJM's motion for summary judgment, finding that the entire controversy doctrine barred plaintiff's bad faith claim. The trial judge further determined that the doctrine of res judicata applied under the principles of Culver v. Ins. Co. of North America, 115 N.J. 451, 463 (1989). Plaintiff appealed.

The Appellate Division, relying on Taddei, supra, 401 N.J. Super. at 465, affirmed on the basis of the entire controversy doctrine, which it stated generally requires that a claim of bad faith be raised in the initial UM action (Wadeer II). The appellate panel rejected plaintiff's claim that his bad faith cause of action did not ripen until the jury returned its verdict. Rather, the panel found that plaintiff's bad faith

10

action accrued prior to the verdict and that plaintiff had a fair opportunity to assert and litigate that action. Accordingly, the panel held that there was nothing unfair or inequitable about requiring a plaintiff to pursue a bad faith claim in an UM action where 1) plaintiff recognized and threatened a bad faith claim before filing the UM action, 2) the carrier made no settlement offer despite an arbitration panel's evaluation of damages in excess of the policy, and 3) the carrier represented that it intended to proceed to trial solely because it would not have to pay more. Plaintiff's remaining arguments were determined to be meritless under Rule 2:11-3(e)(1)(E).

This Court granted plaintiff's petition for certification. Wadeer v. N.J. Mfrs. Ins. Co., 213 N.J. 534 (2013). Thereafter, we granted leave to appear as amici curiae to New Jersey Association for Justice ("NJAJ") and to Insurance Council of New Jersey, Property Casualty Insurers Association of America, and National Association of Mutual Insurance Companies, together.

II.

Plaintiff argues that the Appellate Division erred both in finding that his bad faith cause of action accrued before he filed the UM lawsuit and in applying the entire controversy doctrine to bar his claim as a result.

11

Plaintiff asserts that the legal injuries complained of in his bad faith action did not arise until after the jury verdict when the trial judge reduced the excess award to comport with the $100,000 policy limit. Plaintiff argues that it is illogical to require plaintiff to bring a bad faith claim before the conclusion of the underlying case because acts of bad faith will often continue until the verdict is rendered.

Further, plaintiff specifically notes that there is no commonality of legal issues between plaintiff's UM bodily injury claim and his bad faith action. Plaintiff maintains that the factual circumstances of a personal injury claim arising from a motor vehicle accident do not give rise to a bad faith action. Rather, plaintiff argues that the bad faith cause of action is a separate and distinct claim solely relating to the conduct and actions of NJM throughout the course of the legal proceedings in the UM lawsuit. Emphasizing that the entire controversy doctrine is an equitable concept predicated upon judicial fairness, plaintiff contends that the result below renders null any concept of fundamental fairness and equity by requiring that a bad faith claim be brought prior to the conclusion of the underlying action.

Finally, plaintiff asserts that his bad faith claim against NJM was dismissed without adequate discovery and that it is "highly questionable" to permit a trial court to determine the

12

viability of such a claim on post-trial motion.  As such, plaintiff argues that it is entitled to conduct appropriate discovery to support its bad faith claim, and requests that this Court clarify the procedural and substantive law addressing the prosecution of first-party bad faith claims.

NJM, on the other hand, argues that the trial court and Appellate Division correctly applied the entire controversy doctrine to bar plaintiff's bad faith claim.  NJM maintains that, although plaintiff expressed his opinion that NJM's failure to settle the UM claim was in bad faith, he failed to allege bad faith in his first complaint.  As such, NJM argues that the circumstances establishing the basis for plaintiff's bad faith claim existed for more than two years during the pendency of the first action, and thus plaintiff's failure to plead the claim during that time barred its inclusion in the instant litigation.  NJM additionally asserts that such a conclusion is also amply supported by the doctrines of res judicata and collateral estoppel, given that plaintiff was permitted to seek an adjudication of the bad faith claim before the trial judge, despite shortcomings in his pleadings.

NJM additionally disputes plaintiff's contention regarding the lack of commonality between plaintiff's UM bodily injury claim and plaintiff's bad faith action.  NJM cites to DiTrolio v. Antiles, 142 N.J. 253, 267 (1995), to support its contention

13

that the core set of underlying facts here provides the necessary link between the claims and triggers the requirement that they be determined in one proceeding.

Finally, NJM disputes plaintiff's contention that there is a pressing need for this Court to provide other first-party litigants with procedural guidance regarding the timing of bad faith claims. NJM contends that such litigants would be well-served to follow established principles of claim preclusion and assert their claims prior to the resolution of their UM litigation, with discovery regarding such claims being held in abeyance until the claim for first-party benefits concludes.

NJAJ, appearing as amicus curiae, supports the arguments advanced by plaintiff. NJAJ argues that insurance companies "have approached uninsured motorists and underinsured motorists bodily injury claims in a fashion that bespeaks arbitrary and capricious behavior." On the merits, NJAJ contends that the entire controversy doctrine does not bar plaintiff's claim in the instant case. In addition, and more generally, NJAJ seeks clarification of the standards applicable in resolving first-party bad faith claims against insurers.

Insurance Council of New Jersey, Property Casualty Insurers Association of America, and National Association of Mutual Insurance Companies, appearing together as amici curiae, support the arguments advanced by NJM. Amici contend that the "fairly

14

debatable" standard should not be revisited and further endorse the Appellate Division's application of the entire controversy doctrine to bar plaintiff's bad faith claim.

III.

"[I]t is well-settled that, in New Jersey, 'every insurance contract contains an implied covenant of good faith and fair dealing.'" Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 577 (2011) (quoting Price v. N.J. Mfrs. Ins. Co., 182 N.J. 519, 526 (2005)). As an extension, "an insurance company owes a duty of good faith to its insured in processing a first-party claim." Pickett v. Lloyd's, 131 N.J. 457, 467 (1993). In order to make a showing of bad faith in a first-party claim based on a denial of benefits[2],

> "[a] plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one . . . implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless . . . indifference to facts or to proofs submitted by the insured."
>
> [Id. at 473 (quoting Bibeault v. Hanover Ins. Co., supra, 417 A.2d 313, 319 (R.I. 1980)).]

---

[2] The test is "essentially the same" when showing bad faith based on "inattention to payment of a valid, uncontested claim." Pickett, supra, 131 N.J. at 473-74.

15

"Under the 'fairly debatable' standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim."  Ibid.

IV.

The entire controversy doctrine, codified in Rule 4:30A, provides in pertinent part:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

This doctrine "'embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.'"  Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009) (quoting Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15 (1989)).  We have previously expressed that the purpose of the entire controversy doctrine "are threefold: (1) the need for complete and final disposition through the avoidance of piecemeal

16

decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." DiTrolio, supra, 142 N.J. at 267 (citing Cogdell, supra, 116 N.J. at 15).

In determining whether a subsequent claim should be barred under this doctrine, "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." Id. at 268. "'It is the core set of facts that provides the link between distinct claims against the same parties . . . and triggers the requirement that they be determined in one proceeding.'" Id. at 267-68. There is no requirement that there be a "commonality of legal issues." Id. at 271.

The "polestar of the application of the rule is judicial 'fairness.'" Id. at 272 (1995) (quoting Reno Auto Sales, Inc. v. Prospect Park Sav. and Loan Ass'n, 243 N.J. Super. 624, 630 (App. Div. 1990)). In considering whether application of the doctrine is fair, courts should consider fairness to the court system as a whole, as well as to all parties. Id. at 273-74.

Because plaintiff should have "'a fair and reasonable opportunity to have fully litigated that claim in the original action,'" id. at 274 (quoting Cafferate v. Peyser, 251 N.J. Super. 256, 261 (App. Div. 1991)), the doctrine "does not apply to unknown or unaccrued claims." Ibid. Put simply, "[f]airness

17

in the application of the entire controversy doctrine focuses on the litigation posture of the respective parties and whether all of their claims and defenses could be most soundly and appropriately litigated and disposed of in a single comprehensive adjudication." Id. at 277.

V.

Res judicata, like the entire controversy doctrine, serves the purpose of providing "'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness[.]'" First Union Nat. Bank v. Penn Salem Marin, Inc., 190 N.J. 342, 352 (2007) (quoting Hackensack v. Winner, 82 N.J. 1, 32-33, (1980)). The principle "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." Lubliner v. Bd. of Alcoholic Beverage Control, 33 N.J. 428, 435 (1960). Application of res judicata "requires substantially similar or identical causes of action and issues, parties, and relief sought," as well as a final judgment. Culver, supra, 115 N.J. at 460. Thus, "[w]here the second action is no more than a repetition of the first, the first lawsuit stands as a barrier to the second." Ibid.

18

The test for identity of a cause of action is the most difficult to determine. Id. at 461. To decide if two causes of action are the same, the court must determine:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.
>
> [Id. at 461-62 (quoting United States v. Athlone Indus. Inc., 746 F.2d 977, 984 (3d Cir. 1984)) (citations omitted).]

VI.

We find the procedural posture of the case before us to be identical to Culver, supra, 115 N.J. 451. In Culver, plaintiffs sustained a fire loss to their home caused by a faulty gas stove. Their homeowners' coverage was insufficient to fully compensate them for their loss. The plaintiffs entered into an agreement with their insurance carrier under which they would proceed jointly in an action against the tortfeasors responsible for the fire (the manufacturer, seller and installer of the stove). Under the subrogation agreement, the carrier would bear all costs of the litigation, would be entitled to legal fees, and any recovery would be divided with the carrier receiving eighty percent (80%) and the insureds receiving twenty percent

19

(20%).  Id. at 453.  However, upon settlement of the action against the tortfeasors, the plaintiffs refused to accept their share of the proceeds, and the carrier moved against them in a pending subrogation action to enforce the agreement.  The plaintiffs opposed the motion and cross-moved, proposing a different allocation of the proceeds and alleging fraud and a breach of fiduciary duty by the carrier and its counsel.  Id. at 454.

The trial court rejected those defenses and granted the carrier's motion, ordering distribution of the settlement proceeds to be made in accordance with the agreement entered into by the parties.  The plaintiffs thereafter filed a new action against the carrier, alleging, as they had in their cross-motion that their consent to the agreement was illegally obtained, and that the carrier made misrepresentations and breached its fiduciary duties to them.  The new action sought compensatory damages, attorney's fees, interest, costs and a "just and equitable settlement," or more accurately, a redistribution of the proceeds of the earlier action.  Ibid.

The carrier moved for summary judgment on the grounds that the issues raised in the complaint were barred under res judicata, which the trial court granted.  On appeal, the Appellate Division reversed.  Culver v. Ins. Co. of N. Am., 221 N.J. Super. 493 (App. Div. 1987).  Rejecting the application of

res judicata, the Appellate Division determined that the subrogation agreement was not enforceable and that the insureds were entitled to be paid the full extent of their loss from the settlement proceeds. The carrier filed a petition for certification, which this Court granted. Culver v. Ins. Co. of N. Am., 110 N.J. 305 (1988).

This Court found that the acts complained of were the same, since they involved conduct of the carrier allegedly amounting to a breach of fiduciary duty, fraud, or misrepresentation sufficient to warrant setting aside the agreement between the parties. The Court further concluded that the material facts surrounding the carrier's alleged misconduct were identical, and the same evidence would be necessary in both actions to establish that misconduct. Culver, supra, 115 N.J. at 462. We also noted that the relief sought in both actions was similar, with each seeking to set aside the subrogation agreement to obtain a distribution of the settlement proceeds that was more favorable to the insureds. Accordingly, we determined that res judicata applied to bar the second action against the carrier.

The matter is substantially similar to the case before us, as plaintiff also seeks to relitigate an issue that was placed before the trial court during the first litigation and already fully litigated and determined by the trial court in that first case.

Plaintiff's second action seeking damages against NJM for its alleged bad faith handling of his claim for UM benefits involved the same alleged wrongs, the same theories of recovery (NJM's alleged breach of its duty of good faith and fair dealing, warranting both consequential and punitive damages), the same evidence (the "fact" that NJM refused to settle, "forcing" plaintiff to take his case to trial because its liability would not exceed the UM policy limit regardless of the verdict), and the same alleged material facts as in the first litigation.  Thus, under the framework set forth in Culver, id. at 461-62, we find the issues to be identical.

Plaintiff raised the exact issue during oral argument for his motion to enter judgment for the full amount of the jury verdict on September 17, 2007.  Thereafter, the trial judge addressed and disposed of that issue in his September 17, 2007 order and accompanying statement of reasons on that motion:

> There is a question whether the issue of bad faith has been properly raised since it was not pled in this matter.  In essence, the plaintiff was asking the Court sua sponte to make that determination based on the facts before it.  The only real basis for the claim that defendants acted in bad faith is that NJM refused to make any offer of settlement prior to the trial.  The jury found that the phantom vehicle was the sole cause of the accident. The arbitrators found significant liability on the part of the plaintiff.  Therefore, the question of responsibility for the accident must be considered as "fairly debatable," and the failure to make an offer of settlement

22

does not lead to the conclusion that NJM acted in bad faith.

Having already been fairly litigated and determined, we hold plaintiff's bad faith cause of action is barred from relitigation under the doctrine of res judicata.

We are not persuaded by the arguments of plaintiff and NJAJ that bad faith claims should not be subject to motion practice to decide the merits. All cases regardless of type or complexity are amenable to motion practice to dismiss or for summary judgment if properly supported by the evidence and law. We find no reasoned basis to exempt bad faith cases.

## VII.

Despite our disposition of plaintiff's bad faith claim, we separately consider plaintiff's argument against application of the entire controversy doctrine. Plaintiff maintains that his bad faith claim against NJM should not have been barred by the entire controversy doctrine because, as an "equitable doctrine," its application was unfair because NJM's bad faith, for the most part, came to light during the course of the underlying litigation surrounding plaintiff's UM claim. We agree that barring such bad faith claims on the basis of the entire controversy doctrine is inappropriate in the UM context.

While we acknowledge and reiterate the underlying goals of the entire controversy doctrine -- to encourage complete and

23

final dispositions through the avoidance of piecemeal decisions and to promote judicial efficiency and the reduction of delay, DiTrolio, supra, 142 N.J. at 267 -- we find that the nature of first-party bad faith claims warrants exemption from a harsh application of this rigid doctrine.  Acts of first-party bad faith in the UM context can, and often will, continue throughout the course of the underlying legal proceedings; that is, an insurance carrier's acts of bad faith may often not cease until a verdict is returned, and this is only after the plaintiff has been forced to fully litigate the matter through arbitration and trial.  Rather than forcing a plaintiff to amend the initial complaint to add and reflect each incident of bad faith, we believe that viewing bad faith claims as separate and distinct actions promotes judicial efficiency and economy.  We also note the difficulties that will be encountered in the discovery process by seeking information as to bad faith acts which may be prohibited in the UM cause of action.

The question remains, however, whether fairness requires that our court rules be modified to permit an insured to bring a bad faith cause of action against an insurer after the underlying UM claim is resolved.  In our view, the goals of the entire controversy doctrine are not served by mandating that the plaintiff simultaneously file a first-party bad faith claim with the underlying breach of contract/UM lawsuit.  However, to

foster debate about whether our courts should allow first-party bad faith claims to be asserted and decided after resolution of the underlying, interrelated UM action, we refer Rule 4:30A to our Civil Practice Committee for review.

VIII.

We further conclude that this case presents an ideal opportunity to address the latent ambiguity that exists within the Offer of Judgment Rule, R. 4:58.

Rule 4:58-2 provides that when a pre-trial offer is rejected and the monetary award exceeds 120% of the offer, in addition to costs of suit, the offeror is entitled to:

> (1) all reasonable litigation expenses incurred following non-acceptance; (2) prejudgment interest of eight percent on the amount of any money recovery from the date of the offer or the date of completion of discovery, whichever is later, but only to the extent that such prejudgment interest exceeds the interest prescribed by R. 4:42-11(b), which also shall be allowable; and (3) a reasonable attorney's fee for such subsequent services as are compelled by the non-acceptance."
>
> [R. 4:58-2(a).]

Nevertheless, the rule, as currently written, does not explicitly provide whether the jury's verdict is the trigger for the sanctions and remedies of Rule 4:58-2 or, conversely, whether the molded judgment controls.

25

We find that the molding of a monetary jury award is appropriate when done to conform with and reflect allocation of liability. However, in the UM/UIM context, where reduction is based not on a tortfeasor's comparative negligence but instead on the policy limits of a given carrier, we find that the current construction of Rule 4:58-2 provides no incentive for such carriers to settle. Rather, under the current rule, carriers are prone to take their chances at trial where the offer of judgment is somewhat near their policy limits because they have relatively little to lose in doing so. Thus, the rule's required reduction of a monetary jury award artificially to the policy limits renders moot any reasonable offer of settlement by the insured below the 120% threshold; unless an insured makes an offer of judgment that is unreasonably below its policy limits, it is unlikely that an insurance carrier will choose to settle the respective claim. In light of this, we conclude that the aims of Rule 4:58-2, "to encourage, promote and stimulate early out-of-court settlement," Crudup v. Marrero, 57 N.J. 353, 357 (1971), are ill-achieved in the UM/UIM context under the rule's current construction.

Accordingly, we refer Rule 4:58-2 to the Civil Practice Committee to consider and recommend an appropriate amendment addressing this infirmity.

Lastly, we note that New Jersey Court Rules allow for counsel fees to be awarded "in an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." R. 4:42-9(a)(6). However, with respect to first-party insurance, such as UM/UIM coverage, the statutory prescription for attorney's fees is inapplicable. Rule 4:42-9(a)(6) has not been extended to authorize a fee award to an insured who brings direct suit against his insurer to enforce any direct coverage, including UM/UIM coverage. We refer this issue to the Civil Practice Committee for comments and recommendations addressing the issue.

IX.

For the reasons stated herein, we affirm the judgment of the Appellate Division.

CHIEF JUSTICE RABNER; JUSTICES ALBIN and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion. JUSTICES LaVECCHIA and PATTERSON did not participate.

27

SUPREME COURT OF NEW JERSEY

NO. __A-54__ SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

KWABENA WADEER and OFELIA
WADEER,

     Plaintiffs-Appellants,

        v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

     Defendant-Respondent.

DECIDED _____February 18, 2015_____

        Chief Justice Rabner      PRESIDING

OPINION BY _____Justice Fernandez-Vina_____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | --------------------- | ------------------- |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | --------------------- | ------------------- |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 5 | |

1