BYBEE, Circuit Judge, dissenting: This case presents a complex issue of interjurisdictional preclusion, but it can be solved easily if one adheres to first principles. The preclusive effect of a prior judgment in a federal diversity action is governed by the law of the state in which the rendering court sits. Semtek Int’l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 506-08, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). Here, Daewoo received a prior judgment in a federal diversity action filed in the District of New Jersey. The preclusive effect of that prior judgment is therefore governed by New Jersey state law. There are two twists. First, New Jersey has an unusually robust preclusion rule called the “entire controversy doctrine,” and applying that doctrine here would bar Daewoo’s claims. Second, the New Jersey Supreme Court has said that only its own courts, not federal or other state courts, need apply the entire controversy doctrine. Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co., 142 N.J. 336, 662 A.2d 536, 642 (1995). None of this, however, alters our obligation to implement New Jersey preclusion law just as a New Jersey state court would. I would therefore apply the entire controversy doctrine and affirm the judgment. The majority nevertheless refuses to apply the entire controversy doctrine, citing New Jersey’s limitation of the doctrine to its own courts. Maj. Op. at 1252-54. According to the majority, we cannot apply the doctrine “as if [we] were the New Jersey state court,” but rather must apply the “state court’s law as the Ninth Circuit.” Id. at 1254 (emphasis omitted). Simply put, this is an aberration. We are required to apply the same laiv New Jersey state courts would apply. 'See Semtek, 531 U.S. at 508, 121 S.Ct. 1021. We do not get to apply the law New Jersey state courts would apply if they were federal courts. It is not up to New Jersey to “determin[e] the extraterritorial effect of [its] own laws and judgments,” and we should have declined its invitation to violate fundamental principles of interjuris-dictional preclusion. Thomas v. Washington Gas Light Co., 448 U.S. 261, 272, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980) (plurality opinion). I respectfully dissent. ■I This dispute stems from a sour business deal between Daewoo and GoVideo. Dae-woo obtained a default judgment against GoVideo for some $7.78 million. Unable to collect from GoVideo itself, Daewoo sued GoVideo’s parent companies and other affiliates—entities the majority calls TCLC, TCLI, TCLM, and Opta'. Maj. Op; at 1244-45. Specifically, Daewoo filed two lawsuits, each asserting a different theory of liability regarding the affiliate companies’ responsibility to cover GoVideo’s debt'. First, Daewoo brought a diversity action against TCLI and Opta in the District of New Jersey, alleging that those companies had guaranteed repayment of GoVideo’s debt in a written agreement. The district court rejected Daewoo’s theory and entered summary judgment against it. Second, Daewoo filed this diversity action in the Northern District of California against all four entities affiliated with GoVideo (although only TCLM and Opta remain Defendants). Daewoo alleged, inter alia, that Defendants, were alter egos of GoVi-deo and liable for its debts. The district court dismissed almost all of Daewoo’s claims as barred by the prior judgment. Daewoo appealed. II The majority and I agree that the pre-clusive effect of the prior judgment is governed .by New Jersey state law. See Maj. Op.. at .1251-52. We disagree, however, about how to apply that law here. What complicates this case, is the unique structure of New- Jersey’s preclusion rules, which encompass both a traditional res judicata doctrine and the entire, controversy doctrine. New Jersey’s res judicata doctrine “requires substantially similar or identical causes of action and issues, parties, and relief sought.” Wadeer v. New Jersey Mfrs. Ins. Co., 220 N.J. 591, 110 A.3d 19, 28 (2015) (citation omitted); see also Maj. Op. at 1247-48 & n.7. The state’s entire controversy doctrine is broader. Melikian v. Corradetti, 791 F.2d 274, 279 (3d Cir. 1986). Unlike res judicata, the entire controversy doctrine does not require common legal issues or requested relief but only that “the claims against the different parties arise from related facts or the same transaction or series of transactions.” Wadeer, 110 A.3d at 27 (citation omitted). It is the “core set of facts” common to two actions that triggers the entire controversy bar. Id.; see also Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 662 A.2d 523, 529 (1995) (“[I]t is the factual circumstances giving rise to the controversy itself ... that triggers the requirement of [claims] joinder to create a cohesive and complete litigation.” (citation omitted)); Oliver v. Ambrose, 152 N.J. 383, 705 A.2d 742, 747 (1998) (“The entire controversy doctrine encompasses ‘virtually all causes, claims, and defenses relating to a controversy.’ ” (citation omitted)).[1] Applying the correct preclusion doctrine is of critical importance in this case. Under New Jersey’s res judicata doctrine, there is a strong argument that the prior judgment does not bar Daewoo’s claims here. See Maj. Op. at 1247-52. As the majority notes, the two actions seek slightly different relief (Daewoo hopes to recover more here), and involve different theories of recovery, allegations, and potential .evidence., See id. at 1248-50. The majority and Dae-woo appear to agree, however, that this action would not survive under the entire controversy doctrine. Both actions arise from the same core set of facts, which is all that is necessary for the entire controversy doctrine to apply. See Wadeer, 110 A.3d at 27. Ill According to the majority, we can follow New Jersey law and yet not apply the entire controversy doctrine because New Jersey has limited the doctrine to its own courts. This reasoning is both an affront to controlling federal common law and an open invitation to forum shopping. To show precisely where the majority goes astray, I first discuss general principles of interjurisdictional preclusion and then explain why the New Jersey Supreme Court’s decision in Mortgagelinq cannot keep us from applying the entire controversy doctrine here. Throughout, I refer to the first court to render a judgment as Forran 1 (“FI”) and the second court considering whether to give preclusive effect to that judgment as Forum 2 (“F2”). A Intel-jurisdictional preclusion rules are least complicated when FI is a state court. When a state court enters judgment, the Full Faith and Credit Clause of the Constitution, implemented through the Full Faith and Credit Act, requires every subsequent court occupying the role of F2— whether state or federal—to protect that judgment by applying the preclusion law of FI. U.S. Const, art. IV, § 1; 28 U.S.C. § 1738. F2 must put itself in the shoes of FI and give the same preclusive effect to FI’s judgment as FI would. See Kremer v. Chem. Const. Corp., 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). The rule makes sense: if F2 were permitted to hon- or or ignore FI’s judgment as it pleased, the Full Faith and Credit Act would lose its intended function as a “nationally unifying force.” Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 439, 64 S.Ct. 208, 88 L.Ed. 149 (1943). The full faith and credit obligations of F2 have equal force even when FI purports to limit the extraterritorial effects of its preclusion rules. It is simply not FI’s prerogative to tell other courts to apply its preclusion doctrines differently than it itself would. See Thomas, 448 U.S. at 270, 100 S.Ct. 2647. As the Supreme Court has emphasized: To vest the power of determining the extraterritorial effect of a State’s own laws and judgments in the State itself risks the very kind of parochial entrenchment on the interests of other States that it was the purpose of the Full Faith and Credit Clause and other provisions of Art. IV of the Constitution to prevent. Thomas, 448 U.S. at 272, 100 S.Ct. 2647.[2] All FI can do “to determine the extraterritorial effect of its judgment” is prescribe “the effect of its judgments within the State.” Id. at 270,100 S.Ct. 2647. In accord with the Supreme Court’s guidance, federal and state courts sitting as F2 have consistently applied New Jersey’s entire controversy doctrine where FI was a New Jersey state court. For example, in Rycoline Products, Inc. v. C & W Unlimited, the Third Circuit addressed whether a federal court presented with a mix of federal and state claims should apply the entire controversy doctrine when a New Jersey state court had previously issued a judgment on the same subject matter. 109 F.3d 883, 887 (3d Cir. 1997). The Third Circuit held that it was “bound by New Jersey’s Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act.” Id.; see also Zahl v. Warhaftig, 655 Fed.Appx. 66, 75 & n.8 (3d Cir. 2016) (applying the entire controversy doctrine as F2); Chrystal v. New Jersey Dep’t of Law & Pub. Safety, Div. of State Police, 535 Fed.Appx. 120, 122-23 (3d Cir. 2013) (same). Other courts have followed suit. See Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1170 (2d Cir. 1993); Hammel v. State Farm Mut. Auto. Ins. Co., 114 F.Supp.2d 478, 481 (W.D.N.C. 2000), aff'd, 6 Fed.Appx. 169 (4th Cir. 2001). B The rules are slightly more complex when FI is a federal court. In that scenario, the Full Faith and Credit Act offers no guidance because it protects only judgments -of state courts. See 28 U.S.C. § 1738. The Supreme Court, however,- has addressed this doctrinal gap and filled it with federal common law. See Taylor v. Sturgell, 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008); Semtek, 531 U.S. at 506-08, 121 S.Ct. 1021. The federal common law takes two forms depending on whether FI exercises federal-question or diversity jurisdiction. If the former, F2 applies federal preclusion rules. See Taylor, 553 U.S. at 891, 128 S.Ct. 2161. If the latter, F2 applies “the law that would be applied by state courts in the State in which [FI sits].” Semtek, 531 U.S. at 508, 121 S.Ct. 1021. This rule promotes “nationwide uniformity” by ensuring that “the same claim-preclusive rule ... applies] whether the dismissal has been ordered by a state or a federal court.” Id. at 508, 121 S.Ct. 1021. “[A]ny other rule would produce the sort of ‘forum-shopping .,, and ... inequitable administration of the laws’ that Erie seeks to avoid.” Id. at 508-09, 121 S.Ct. 1021 (quoting Hanna v. Plumer, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)). C Deferring to the New Jersey Supreme Court’s decision in Mortgagelinq—as the majority does here, Maj. Op. at 1252-53— contravenes these fundamental principles of interjurisdictional preclusion. Mortga-gelinq addressed whether federal law or New Jersey’s entire controversy doctrine governs the preclusive effect of a judgment by a Pennsylvania federal court (FI) on claims subsequently brought in New Jersey state court (F2). 662 A.2d at 540. Indeed, the court summarized the issue before it as follows: • Had Mortgagelinq I and Mortgagelinq II been brought successively in New Jersey courts, there would be little doubt that application of the entire controversy doctrine would preclude the omitted claims. The issue is whether, the non-joinder of parties,in a related action in the Pennsylvania federal court results in the same party preclusion in New Jersey. , Id. The New Jersey Supreme Court concluded that the entire controversy doctrine applied, but only as a bar to “successive actions in New Jersey” and not as “a barrier elsewhere.” Id. at 542. The court therefore affirmed dismissal of the action based on the entire- controversy doctrine, but without prejudice, inviting the plaintiffs to file their claims elsewhere. Id. (“Maintaining a cohesive federal system ,.. does-not.require that the other parts of the : federal system honor our entire controversy doctrine.”). A vigorous dissent noted the perversity of this “untoward result,” preferring a straightforward- application of traditional interjurisdictional preclusion rules: Under established choice-of-law principles, the preclusive effect of a judgment is determined by the law of the jurisdiction that rendered it,.., Restatement (Second ■ of Judgments) § 87 (1982) (“Federal law determines the effects under the rules of res judicata of a judgment of a federal court.”), “If [a] plaintiff would be precluded from, maintaining ... a second action in the [jurisdiction] of rendition, he will similarly be barred from maintaining such an action in other [jurisdictions].” Restatement (Second of Judgments) § 95 comment e (1971). Federal law would not preclude plaintiffs from maintaining an action against these defendants in federal courts. Consequently, I would not bar plaintiffs from pursuing the defendants in the courts of this State. Id. at 543 (Pollock, J., dissenting) (all but the first alteration in original).[3] Not surprisingly, Mortgagelinq attracted considerable controversy among federal-courts scholars almost immediately after it was issued. See generally Stephen B. Burbank, Where’s The Beef? The Interju-risdictional Effects of New Jersey’s Entire Controversy Doctrine, 28 Rutgers L.J. 87 (1996); Rochelle Cooper Dreyfuss & Linda J. Silberman, Interjurisdictional Implications of the Entire Controversy Doctrine, 28 Rutgers L.J. 123 (1996); Perry Dane, Sovereign Dignity and Glorious Chaos: A Comment on the Interjurisdictional Implications of the Entire Controversy Doctrine, 28 Rutgers L.J. 173 (1996). More importantly, it led directly to the majority’s error in this case. D The majority followed Mortgagelinq’s two-system approach: apply one rule if F2 is a New Jersey state court; apply a different rule if F2 is a federal court. That principle flatly contradicts Semtek. Under Semtek, we must, as F2, apply “the law that would be applied by state courts in the State in which [FI sits].” 531 U.S. at 508, 121 S.Ct. 1021. Because FI here sits in New Jersey, we must apply the law “that would be applied by [New Jersey] state courts,” id.—i.e., the entire controversy doctrine. The answer is that easy; our analysis should have begun and ended there. As noted at the outset, the majority responds that we cannot apply “the [entire controversy] doctrine as if [we] were the New Jersey state court,” but rather must apply “the New Jersey state court’s law as the Ninth Circuit.” Maj. Op. at 1254. This simply makes no-sense. Our task is to put ourselves in the New Jersey state court’s shoes and to give the same, preclusive effect to New Jersey’s judgments as, New Jersey would. It is not for New Jersey to tell any other court, including our, own, to apply the entire controversy doctrine differently than it itself would. See Thomas, 448 U.S. at 270, 100 S.Ct. 2647 (“[A] State is permitted to determine the extraterritorial effect of its judgment; but it may only do so indirectly by prescribing the effect of its judgments within the State.”)., The majority also contends that the entire controversy doctrine is a mere “procedural- housekeeping tool” meant only to ‘“preserv[e] [New Jersey’s] judicial resources.’” Maj. Op. at 1252-53 (quoting Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 142 (3d Cir. 1999)); id. at 1253-54. This makes no difference. Irrespective of New Jersey’s reasons for adopting the entire controversy doctrine, the doctrine is clearly a rule of preclusion. See, e.g., Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 25 A.3d 1027, 1036 (2011) (stating that the entire controversy doctrine is a “claim preclusion rule”); McNeil v. Legislative Apportionment Comm’n, 177 N.J. 364, 828 A.2d 840, 858-59 (2003) (“The concept that a party is required to bring all possible claims in one proceeding is embodied in the closely linked concepts of res judicata and the entire controversy doctrine.”)-[4] Even New Jersey Rule of Court 4:30A, which enforces the entire controversy doctrine, refers to “preclusion” as a sanction for “omitt[ing] claims.” Indeed, the New Jersey Supreme Court has stated, time and time again, that the purpose of the entire controversy doctrine is threefold: “(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.” Wadeer, 110 A.3d at 27; DiTrolio v. Antiles, 142 N.J. 253, 662 A.2d 494, 502 (1995); Cogdell by Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 560 A.2d 1169, 1173 (1989). These three goals are virtually identical to those of res judicata, and the New Jersey Supreme Court has said so: Res judicata, like the entire controversy doctrine, serves the purpose of providing “ ‘finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness[.]’ ” Wadeer, 110 A.3d at 27-28 (citation omitted); see also VW Credit, Inc. v. Coast Auto. Grp., Ltd., No. A-0553-04T3, 2005 WL 3750752, at *4 (N.J. Super. Ct. App. Div. Feb. 14, 2006) (“The entire controversy doctrine in our State advances the policies of mandatory joinder and claim preclusion associated with the more widely known doctrine of res judicata.”); In re Crispino, 160 B.R. 749, 756 (Bankr. D.N.J. 1993) (“The purposes of the entire controversy are similar if not identical to the purposes of res judicata”). Because the entire controversy doctrine is a rule of preclusion, we must apply it here. We do not look to whether New Jersey harbors especially warm feelings for its preclusion mies or could not care less about preclusion generally. All that matters is that New Jersey has a rule that applies in its courts. Federal common law requires us to honor that rule, and that is the end of the matter.[5] Finally, if there is an arch-principle overlaying interjurisdictional preclusion, it is one of fairness to all parties. When we sit in diversity, we sit in the place of state courts and do not want parties to game the system by choosing a forum based on what preclusion rules will apply. The majority ignores this principle and, in doing so, not only facilitates forum shopping but approves it in this case. Cf. Semtek, 531 U.S. at 508-09, 121 S.Ct. 1021 (noting that having different preclusion rules in federal versus state court “would produce the sort of ‘forum-shopping ... and ... inequitable administration of the laws’ that Erie seeks to avoid”) (citation omitted). [[Image here]] Interjurisdictional preclusion can be complex, but this case boils down to a few simple premises. New Jersey gets to decide its preclusion law. It does not get to dictate how federal courts apply that law. We apply New Jersey law just as New Jersey state courts would apply it. The majority did not do that. I respectfully dissent. . The doctrine is currently enforced through New Jersey Court Rule 4:30A: Non-joinder of claims required to be joined by the entire controversy doctrine shall re-suit in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions). Claims of bad faith, which are asserted against an insurer after an underlying uninsured motorist/underinsured motorist claim is resolved in a Superior Court action, are not precluded by the entire controversy doctrine. See also N.J. Ct. R. 4:5-l(b)(2), (imposing a duty for parties to disclose "the names of any non-party who should be joined in the action”). New Jersey courts have not always clearly articulated the distinction between res judicata and the entire controversy doctrine, and some have even equated the two. See, e.g., Long v. Lewis, 318 N.J.Super. 449, 723 A.2d 1238, 1243 (N.J. Super. Ct. App. Div. 1999) (“The claim preclusion aspect of the entire controversy doctrine is essentially res judicata by another name.”). As the most recent New Jersey Supreme Court decision on the subject indicates, however, the doctrines are indeed distinct. See Wadeer, 110 A.3d at 27-28. . Although Thomas’ s discussion of the extraterritorial effects of state judgments appears in a plurality opinion, at least six Justices agreed with the principle. See id. at 290-91, 100 S.Ct. 2647 (Rehnquist, X, dissenting). The remaining three Justices conceded that the states' attempts to dictate how their preclusion rules are to be applied in other jurisdictions “rest on questionable foundations.” Id. at 289, 100 S.Ct. 2647 (White, J., concurring in the judgment). . Mortgagelinq was decided pre-Semtek. Neither opinion distinguished the two types of federal preclusion rules discussed above.- In fact, at the time, there was considerable debate over what rule applied to protect the judgment of a federal court sitting in diversity as FI. Compare Stephen B, Burbank, Interju-risdictional Preclusion, Full Faith and Credit and Federal Common Law: A General Approach, 71 CORNELL L. REV, 733, 805-17 (1986) (arguing in favor of the rule that Sem-tek eventually adopted), with Ronald E, Deg-nan, Federalized Res Judicata, 85 YALE L.J. 741, 750-55 (1976) (arguing in favor of uniform federal res judicata rules irrespective of the source of FI’s jurisdiction). It is not clear which federal preclusion rule should have applied in Mortgagelinq because the decision does not mention the basis for jurisdiction in FI. , Accord Prevratil v. Mohr, 145 N.J. 180, 678 A.2d 243, 246 (1996) ("[The entire controversy doctrine] stems directly from the principles underlying the doctrine of res judicata or claim preclusion.”); Paulus, Sokolowski & Sartor, LLC v. Darden, No. A-4004-13T2, 2015 WL 6456124, at *4 (N.J. Super. Ct. App. Div. Oct. 27, 2015) (characterizing the entire controversy doctrine as a “claim-preclusion device”); VW Credit, Inc. v. Coast Auto. Grp., Ltd., No. A-0553-04T3, 2005 WL 3750752, at *5 (N.J. Super. Ct. App. Div. Feb. 14, 2006) (describing res judicata and the entire controversy doctrines as "rules of claim preclusion”); Accident Fund Ins. Co. v. PML Holdings Grp., L.L.C., No. A-3436-08T1, 2009 WL 4724804, at *6 (N.J. Super. Ct. App. Div. Dec. 11, 2009) ("[The entire controversy doctrine] is a preclusionary device, intended to prevent fractionalized litigation by requiring the assertion of all claims arising from a single controversy in a single action.”). . Even if New Jersey's reasons for adopting the entire controversy doctrine were relevant, would not preserving federal judicial resources be an equally valid reason to apply the same rule New Jersey courts would? That is, even granting that New Jersey is not concerned with our time—"this goal of preserving New Jersey's judicial resources does not benefit from a non-New Jersey court (sitting as F2) closing its courthouse doors,” Maj. Op. at 1253—we still care about our time as much as New Jersey courts care about theirs. The majority’s contention that applying New Jersey’s doctrine here would be "incompatible with federal interests,” Maj. Op. at 1254, is both unsupported and inapplicable.