

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-2007

# Opdycke v. Stout

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1000

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Opdycke v. Stout" (2007). *2007 Decisions.* Paper 1198.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1198

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1000

CATHERINE OPDYCKE,

Appellant

v.

EDWARD J. STOUT, JR., Police Officer;
HADDON STEIN, Sergeant; JAMES L. FERGUSON,
Captain; FRANKLIN TOWNSHIP POLICE DEPARTMENT;
STEPHANIE CAREY, Health Officer; FRANKLIN
TOWNSHIP DEPARTMENT OF HEALTH; KEN W. DALY,
Township Manager; FRANKLIN TOWNSHIP

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 03-cv-04880)
District Judge: Honorable Mary Little Cooper

Submitted Under Third Circuit LAR 34.1(a)
April 20, 2007

Before: McKEE and AMBRO, Circuit Judges,
and MICHEL,[*] Chief Judge

(Opinion filed: April 27, 2007)

---

[*] Honorable Paul R. Michel, Chief Judge, United States Court of Appeals for the
Federal Circuit, sitting by designation.

―――――――――

OPINION

―――――――――

AMBRO, <u>Circuit Judge</u>.

Catherine Opdycke appeals the dismissal of her twenty-two count complaint. The pleading sets out claims under the Fourth, Fifth, and Sixth Amendments to the U.S. Constitution against Franklin Township (New Jersey), the Franklin Township Police Department and three of its police officers, and the Franklin Township Health Department and two of its employees. There are as well claims under New Jersey statutory and common law and the New Jersey Constitution against the same defendants. Though this "shotgun complaint" usually creates "a task that can be quite onerous" for courts,[1] resolving the issues in this particular appeal is fairly simple.[2] That is because, prior to bringing this action in the District Court, Opdycke already had sued these defendants in New Jersey Superior Court on the same matter; therefore, these claims are barred from being brought in federal court.

―――――――――――――――

[1]*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions."); *see also OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 525 & n.4 (Bankr. D. Del. 2006).

[2]This is not to lend our approval to such an unfocused manner of pleading.

I.

Unlike the complaint itself, the events forming its basis are straightforward. On September 6, 2001, after a summer of complaints and related correspondence, Society Hill Condominiums filed an action in New Jersey Superior Court seeking to enjoin Opdycke from harboring any more cats than the 38 already living in her unit. Opdycke was suffering from depression and, at the time, was experiencing an allergic reaction to her medication that prevented her from adequately caring for the animals. On September 8th, a neighbor called Franklin Township police out of concern for Opdycke's welfare, and she was voluntarily taken to the hospital, remaining there for nine days.

Meanwhile, word of the one-species zoo in Opdycke's condominium was spreading throughout official Franklin Township. Soon after Opdycke was admitted to the hospital, her daughter gave access to Animal Control to remove the orphaned felines. They herded all but two of them, and on September 10th they returned, set traps, and collected the stragglers. Also that day, at the request of Animal Control, Stephanie Carey from Franklin Township's Department of Health inspected the condominium, likewise receiving access from Opdycke's daughter. Carey returned the next day and posted a Notice to Abate a Nuisance Affecting Public Health that, *inter alia*, declared the unit unfit for human habitation and gave Opdycke 30 days to have her home professionally cleaned. Opdyke's daughter informed her of the notice at the hospital within two days of its posting.

Despite the Notice of Abatement, when Opdycke was released from the hospital

3

on September 17th, she went to clean her condominium for several days, prompting neighbors again to complain. On September 21st, Franklin Township police responded and informed Opdycke that she was not permitted to occupy the premises for any purpose without first notifying the Police Department. Over the next several days, Opdyke's attorney and the Department of Health negotiated over the circumstances under which she would have the unit cleaned. Before an understanding could be reached, however, and without proper authorization, Opdycke returned to her condominium on the morning of October 12th, 2001.

By coincidence, Carey also went to inspect the unit that day. The events that follow spawned this lawsuit. Upon Opdycke's refusal to allow Carey entrance, she phoned the Franklin Township police at the direction of her supervisor, Ken W. Daly. First to arrive was Officer Edward J. Stout, Jr., but Opdycke refused to open the door to him. Stout radioed Sergeant Haddon Stein for assistance. When he arrived, Stein called Captain James L. Ferguson, who informed the officers that they were authorized to use force to gain access to the condominium. After getting no response from Opdycke despite repeated attempts, the officers began to pry open the door with a crowbar. This prompted Opdycke to move a tea cart in front of the door.

Shortly after that, Opdycke called through the door to the officers, "I've just been released from a psychiatric ward and if you try forcing your way in here, I'll hang myself." This brought a predictable reaction by the officers: a redoubled effort to open Opdycke's door. After several minutes of trying, Officer Stout was able to pry the door

4

open about 12 inches. He squeezed himself partially inside and asked Opdyke to back away. She did not, and Stout sprayed her with pepper spray. Soon Stout was able to enter fully. He handcuffed Opdycke, saying he was taking her for a psychiatric evaluation. Stout, aided by Stein, then escorted Opdycke to the patrol car; she refused to get in and kicked Stein. The officers were finally able to put Opdycke in the car and take her to the hospital. She was released three days later.

Aside from leading to criminal proceedings against Opdycke, this incident also prompted Opdycke, on October 19, 2001, to file a third-party complaint against Franklin Township and its Department of Health in the pre-existing Society Hill lawsuit. In that complaint, Opdycke demanded damages for the events of the 12th, as well as an injunction to prevent future enforcement of the Notice of Abatement. She did not assert any federal civil rights claims. Nearly a year later, on September 23, 2002, all parties settled in an agreement that required Opdycke to remove her belongings from the condominium, clean it, and allow Society Hill Condominiums and Franklin Township to inspect it in preparation for its sale. Approval by the Superior Court took the form of a consent order.

Over a year after that, on October 14, 2003, Opdycke filed this case in the United States District Court for the District of New Jersey. In an order dated November 30, 2005, the Court dismissed her federal claims as barred by the doctrine of *res judicata* and dismissed her state claims without prejudice to refiling them in state court. Opdycke appeals.

II.

"The Full Faith and Credit Act, 28 U.S.C. § 1738, originally enacted in 1790, ch. 11, 1 Stat. 122, requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (quoting *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986)); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984); *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Therefore, New Jersey's own preclusion rules, known as the "Entire Controversy Doctrine," govern whether this federal suit is barred. *Rycoline Prods., Inc. v. C&W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997).[3]

New Jersey's Entire Controversy Doctrine is codified in Rule 4:30A of the New Jersey Rules of Civil Procedure: "Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . ." Though bringing a third-party complaint is not always mandatory, *see* N.J. R. CIV. P. 4:8-1(a),[4] once brought it is subject to the same rules of joinder as any other complaint, *see id.* 4:8-1(b) ("The mandatory

---

[3]Appellees Stout, Stein, and Ferguson argue (and the District Court held) that the federal law of *res judicata* governs in this situation. It does not, despite our characterization of New Jersey's Entire Controversy Doctrine in *Rycoline Products* as that state's "specific, idiosyncratic, application of traditional *res judicata* principles." 109 F.3d at 886.

[4]*But see Crispin v. Volkswagenwerk, A.F.*, 343 A.2d 250 (N.J. 1984).

6

joinder provisions of R. 4:30A shall apply to all affirmative claims assertible pursuant to this rule . . . .").  Put another way, the Entire Controversy Doctrine "requires a party to bring in one action all affirmative claims that it might have against another party[5] . . . or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods.*, 109 F.3d at 885 (internal quotation marks omitted) (citing *Mystic Isle Dev. Corp. v. Perskie & Nehmand*, 662 A.2d 523 (N.J. 1995); *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 662 A.2d 509 (N.J. 1995)).  "[T]he central consideration is whether the claims . . . arise from related facts or the same transaction or series of transactions."  *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995).  Given that Opdycke brought a third-party claim against Franklin Township and its Health Department, any subsequent claims against Franklin Township or parties in privity with it[6] that are within

---

[5]The Entire Controversy Doctrine covers those in privity with parties as well. *McNeil v. Legislative Apportionment Comm'n*, 828 A.2d 840, 859 (N.J. 2003).

[6]To the extent that the individual defendants (Stout, Stein, Ferguson, Carey, and Daly) are sued in their official capacities, they are, as a matter of law, in privity with Franklin Township.  *Gregory v. Chehi*, 843 F.2d 111, 119–20 (3d Cir. 1988).  To the extent that are sued in their individual capacities, traditional *res judicata* principles would not place them in privity with Franklin Township.  *Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003) (citing cases); *see Gregory*, 843 F.2d at 119–20.  We conclude, however, that the Entire Controversy Doctrine is broader than traditional *res judicata* principles and includes Opdycke's claims against the individual defendants in that capacity just as it does her official-capacity claims.  *See Peskin v. Liberty Mut. Ins. Co.*, 520 A.2d 852, 860–62 (N.J. Super. Ct. Law Div. 1986) ("A component of the controversy may not be withheld, and, if it is, the subsequent action must be dismissed.").

As for the Police and Health Departments, the District Court was correct to have dismissed those entities because they are but arms of Franklin Township itself. *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997) (citing *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 671 n.7 (3d Cir. 1988)).

the doctrine are precluded by federal law.[7]

Opdycke's third-party complaint in the New Jersey Superior Court was styled as a plea for injunctive relief against Franklin Township to prevent enforcement of its Notice of Abatement. The termination of that claim may be enough by itself to bar this federal suit. *See Barreto-Rosa v. Varona-Mendez*, 470 F.3d 42 (1st Cir. 2006) (applying Puerto Rican law to hold that a § 1983 suit was barred subsequent to the voluntary dismissal of a prior action for injunctive relief arising from of the same facts). The pleading, however, after recounting the entire episode between Opdycke and the individual defendants on October 12th, also requested "compensatory damages." Though the complaint in this suit is more specific as to the legal claims entitling her to damages, Opdycke's third-party complaint in state court, which was based on the same facts as here, was quite sufficient, once the consent order issued, to bar these claims here.[8] Indeed, Opdycke's third-party complaint itself acknowledges their interconnectedness:

**ENTIRE CONTROVERSY DOCTRINE NOTICE**

This pleading raises facts which if proven could constitute a cause of action for Civil Rights violations against Catherine Opdycke by the Township of Franklin, the Franklin Township Health Department, Officer Edward J. Stout, Jr[.], Sergeant Stein of the Franklin Township Police Department, Health Officer Stephanie Carey, and other unknown officers of the same

---

[7]For *res judicata*-style concerns, it is irrelevant whether Opdycke's third-party complaint was permissive or mandatory. *But cf. infra* (discussing *England* reservations). The only relevant consideration here is that the third-party complaint was brought.

[8]Consent decrees have the same preclusive effect as any other final judgment on the merits. *Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 96–97 (3d Cir. 1981) (citing *Harding v. Harding*, 198 U.S. 317 (1905); *Burgess v. Seligman*, 107 U.S. 20 (1882)).

Health Department.  Third-party plaintiff is requesting that the court advise her if she needs to join these parties in this action in order to preserve her potential cause of action against these parties.

Answer to Verified Complaint and Verified Third-Party Complaint at 14, *Society Hill at Somerset II Condominium Ass'n v. Opdycke*, No. SOM-C-12055-1 (N.J. Super. Ct. Law Div. filed Oct. 19, 2001).[9]  The Entire Controversy Doctrine would bar this lawsuit in the

---

[9]Opdycke's attorney also raised the issue at a hearing in the New Jersey Superior Court:

>    MR. APUZZO [Counsel for Opdycke]: One last point.  In my pleadings, I raised the issue of the Entire Controversy Doctrine. [I] want to make sure I'm protected . . . with respect to whether [Opdycke] has any cause of action later on down the road.
>
>    . . .
>    I'm referring to a possible cause of action that Miss Opdycke might want to file with respect to the township for civil rights violations.
>    THE COURT: I thought -- did you not include those in your answer and third-party complaint?
>    MR. APUZZO: Not as a -- I've raised the issue.  I really didn't address it completely as --
>    THE COURT: This case isn't over.  If you want to amend your pleadings, [you] certainly are free to make that application and may well be consented to or I'm going to grant as a practical matter.
>    MR. APUZZO: I'm asking that that particular cause of action be part of this litigation or be free to go to Federal Court and file the action.
>    THE COURT: Normally[, they would] be brought in this action - at least to the extent there's any state rights. [If you w]ant to do it in Federal Court, obviously you're free to do it in Federal Court.
>    THE COURT: Mr. Rainone [Counsel for Franklin Township and the Health Department].
>    MR. RAINONE: Unless this case is removed to the Federal Court, I don't think you can bring in the Federal Court if you can bring all of those causes of action in the State Court . . . .
>    THE COURT: I understand your concern . . . .
>    MR. APUZZO: She might want to file in Federal Court, civil rights, and I don't want to be precluded from doing that because we've had this action and [have it] later on argued that we're subject to the Entire

9

New Jersey courts, and it is therefore likewise barred in federal court. 28 U.S.C. § 1738.

The last line of the excerpt reproduced above leaves us with one remaining item to address. Opdycke contends that, when she was in state court, she specifically reserved—pursuant to *England v. Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964)—the federal claims asserted here, thus preventing the ruling we issue today. So-called "*England* reservations" are traditionally used to preserve a federal claim when a federal court abstains from judgment to allow state court proceedings to resolve potentially dispositive issues. *See, e.g.*, *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411 (3d Cir. 2003); *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 35 F.3d 813 (3d Cir. 1994). Many courts of appeals have confined the use of *England* reservations to those situations (*i.e.*, when a federal court has first abstained). *See* 18B CHARLES ALAN WRIGHT *ET AL.*, FEDERAL PRACTICE AND PROCEDURE § 4471.1, at 250–53 (2d ed. 2002) (citing cases). Though we have recognized that exceptions to that general rule do exist, *see The Ivy Club v. Edwards*, 943 F.2d 270 (3d Cir. 1991); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064 (3d Cir. 1990), those cases represent "unique circumstances that may never be repeated," 18B WRIGHT, *supra*, § 4471.1, at 256 (referring to our decision in *The Ivy Club*).

When a plaintiff chooses to litigate a controversy in state court, reserving potential

---

Controversy Doctrine. That's why I raised it in the pleadings.
    THE COURT: The record will reflect your concern [o]f your wish to file in Federal Court.

10

federal claims for a subsequent federal suit under the auspices of *England* is ineffective. *England* reservations are for plaintiffs that have been "displaced from federal court," *Instructional Sys.*, 35 F.3d at 820, and "forced to litigate in state court," *Bradley*, 913 F.2d at 1071. On the other hand, "[a] plaintiff who *elects* to go to state court first is likely to be precluded from a second federal action, even if an express reservation is attempted." 18B WRIGHT, *supra*, § 4471.1, at 250 (emphasis added); *see also Schuster v. Martin*, 861 F.2d 1369, 1373–74 (5th Cir. 1988) ("[*England*] does not apply where the plaintiff voluntarily chooses to pursue a state action first.").

The New Jersey Rules of Civil Procedure make clear that bringing a third-party complaint is not mandatory as a general matter. *See* N.J. R. CIV. P. 4:8-1(a). Also, any argument that New Jersey's Entire Controversy Doctrine somehow mandated that Opdycke bring her third-party complaint against Franklin Township is belied by the allegations in the initial suit. That case involved a private dispute between Opdycke and Society Hill (her condominium association) over the condition of her unit; Franklin Township was not implicated, and its actions became relevant to the initial suit only after it was filed. Though there is no doubt that Opdycke's third-party complaint was proper, neither was it required. Because she voluntarily brought her dispute against Franklin Township in state court, Opdycke did not have the option of making an *England* reservation and splitting her claims between state and federal court. The attempt to do so was misplaced.

\* \* \* \* \*

11

In this context, we affirm the judgment of the District Court.[10]

---

[10]The District Court dismissed Opdycke's state-law claims without prejudice under 28 U.S.C. §§ 1367(c)(3) and (d), tolling any statute of limitations for 30 days so that they could be re-filed in state court. Because those claims, just as much as the federal claims, would be barred under New Jersey's Entire Controversy Doctrine, we fail to see the need to have chosen this route or to understand how it is an economical use of judicial resources. Nevertheless, the defendants do not cross-appeal the District Court's decision in this regard, and we affirm that disposition as well.