**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2628
_____

KENNETH ZAHL, M.D.,
Appellant

v.

JERI I. WARHAFTIG, individually;
KEVIN JESPERSON, individually; DOUGLAS J. HARPER, individually; SANDRA Y.
DICK, individually; JEFFREY BURSTEIN, individually; ESTATE OF PAUL R.
KENNY; STEPHEN LAMAZOW, M.D.; MARIO A. CRISCITO, M.D.; PAUL
MENDELOWIEZ, M.D.; NJ BOARD OF MEDICAL EXAMINERS; LAURA
SANDERS, ALJ individually; ELAINE CARUSO-LONG; JOHN A. YULO, M.D.;
JOHN AND JANE DOES 1-100
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:13-cv-01345)
District Judge:  Honorable Jose L. Linares
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 17, 2016

Before:  AMBRO, NYGAARD and VAN ANTWERPEN, Circuit Judges.

(Filed: July 1, 2016)

_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7,
does not constitute binding precedent.

_____

VAN ANTWERPEN, <u>Circuit Judge</u>.

Kenneth Zahl, M.D. appeals the final decision of the U.S. District Court for the District of New Jersey granting summary judgment in favor of a group of defendants comprised of current and former employees in the Office of the Attorney General of New Jersey ("OAG"), current and former members of the NJ Board of Medical Examiners, the NJ Board of Medical Examiners ("BME or "Board"), and two of Dr. Zahl's former employees (collectively "Appellees"). For the following reasons, we will affirm the decision of the District Court.

## I. Factual and Procedural History

We refrain from delving into the details of Zahl's extensive litigation history in both federal and New Jersey state courts, as the factual background is set forth at length in previous opinions issued in this matter. *See* (A1). At this juncture, as we write only for the benefit of the parties, it is sufficient to indicate the barebones of the overarching matter and focus only on the facts implicated in the instant action. Zahl's medical license was revoked in 2003 through state court proceedings initiated in 1999 by an investigation of Zahl's Medicare billing practices by the BME. (A2). On appeal, in 2003, the New Jersey Superior Court, Appellate Division, stayed the revocation of Zahl's license. (A2). The Board also required that a Nurse Practice Monitor keep track of any medical activities for which Zahl were to bill. (A2). These license revocation proceedings have been referred to as *Zahl I* throughout litigation in federal and state court.

2

In 2004, the OAG filed a complaint seeking to close Zahl's practice after reports submitted by the second Nurse Practice Monitor indicated that all of his coding for billed medical procedures was incorrect.[1] (A2–A3). The OAG agreed to let Zahl continue practicing with new practice monitors in place. (A3). Concurrently, litigation surrounding the revocation of Zahl's license continued and the matter ultimately ended up before the Supreme Court of New Jersey. (A3).

Shortly before the scheduled oral argument in front of the Supreme Court of New Jersey in *Zahl I*, the OAG filed a complaint initiating the proceedings referred to as *Zahl II*. (A3). The complaint again sought to close Zahl's practice for failure to comply with the Board's billing monitoring requirements and the Board suspended Zahl's license. (A3). On appeal, *Zahl I* concluded when the Supreme Court of New Jersey upheld the Board's finding of Zahl's liability and its determination that revocation of his license was warranted, reversing the Appellate Division's decision reducing the punishment from revocation to sanctions. (A3).

While *Zahl I* and *Zahl II* proceeded in state court, Zahl filed numerous suits in federal court, beginning in 2001 with an Order to Show Cause for injunctive relief against prosecutors in the OAG and other New Jersey officials to halt the *Zahl I* license revocation proceedings. (A3). This Court affirmed the District Court's dismissal based on *Younger* abstention because of the ongoing state court proceedings. *Zahl v. Harper*, 282

---

[1] The first Nurse Practice Monitor assigned to Zahl was reassigned and replaced due to a deterioration of their working relationship after she submitted her initial report to the Board as well as to a former prosecutor in the Attorney General's office who was working on the appeal of *Zahl I*. (A2).

3

F.3d 204, 206 (3d Cir. 2002). In 2006, Zahl filed another complaint for an Order to Show Cause in federal court, which added both new claims and new defendants to the 2001 complaint. (A3). The District Court construed the 120-page amended complaint, filed in 2007, as asserting numerous claims which included, *inter alia*, violations of 42 U.S.C. §§ 1983, 1985(3), and 1986, injunctive relief pursuant to § 1983, monetary damages pursuant to §§ 1983, 1985(3), and 1986, a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim pursuant to § 1962(c) & (d), and state RICO claims. (A4). The District Court dismissed of all of Zahl's claims in six different opinions issued from March 2008 to April 2010, which we affirmed on appeal. *Zahl v. N.J. Dep't of Law & Pub. Safety Div. of Consumer Affairs*, 428 F. App'x 205, 207–08 (3d Cir. 2011). As relevant to the instant action, the sixty-two page unpublished March 2008 District Court opinion dismissed Zahl's claims based on the *Rooker-Feldman* doctrine, *Younger* abstention, New Jersey's entire controversy doctrine, issue preclusion, absolute immunity, and failure to state a claim upon which relief can be granted. (A535–A596).

The 100-page complaint in this action, filed in 2013 subsequent to the close of New Jersey state court litigation and this Court's decision affirming the dismissal of Zahl's claims arising from the 2006 suit, asserts seven counts, including § 1983 claims based on violations of Zahl's rights under the First, Fifth and Fourteenth Amendments, state and Federal civil RICO claims, and a claim for civil conspiracy under New Jersey common law. (A35–A134). The District Court (Linares, J.) converted Appellees' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to a Motion for Summary Judgment. (A4–A5). After affording the parties the opportunity to provide

4

further briefing and evidence, the District Court granted summary judgment in favor of Appellees. (A4, A16–A17). The District Court denied Zahl's Motion for Reconsideration. (A21–A22). This timely appeal of the order granting summary judgment and the order denying reconsideration followed.[2] (A24). Zahl now challenges the grant of summary judgment as premature because the District Court did not permit the requested pretrial discovery. (Appellant's Br. 7–8).

## II.    Discussion[3]

### A.    Standard of Review

We review a district court's refusal to delay action in a grant of summary judgment challenged as premature for abuse of discretion. *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). We exercise plenary review over a district court order granting summary judgment and apply the same standard as the District Court. *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 246–47 (3d Cir. 2002). We will affirm the grant of summary judgment if the moving party has shown that the evidentiary material on the record, if reduced to admissible evidence, is insufficient to permit the nonmoving party to

---

[2] Zahl initially filed a notice of appeal only indicating that he wished to appeal the denial of motion for reconsideration. (A23). He later filed an amended notice of appeal indicating that he was appealing both of the District Court's orders. (A24). We need not address the denial of reconsideration, and deem this issue abandoned and waived, as Zahl has not mentioned it in his opening brief or presented any argument in support. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

[3] The District Court had jurisdiction over the alleged violations of federal constitutional and statutory rights pursuant to 28 U.S.C § 1331. It exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the alleged violations of New Jersey state law. We have jurisdiction to review final orders of a district court pursuant to 28 U.S.C. § 1291.

carry its burden of proof, and there are no genuine disputes as to issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see* Fed. R. Civ. P. 56(a). "We exercise plenary review over the legal determination of whether the requirements for abstention have been met. Once we determine that the requirements have been met, we review a district court's decision to abstain under *Younger* abstention principles for abuse of discretion." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (quoting *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992)) (internal quotation marks omitted).

B.      Younger *Abstention*

A subset of the larger doctrine of abstention, *Younger* abstention provides that "[a] federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." *Addiction Specialists, Inc.*, 411 F.3d at 408 (citing *Younger v. Harris*, 401 U.S. 37 (1971)). As such, our "longstanding public policy against federal court interference with state court proceedings" is based on respect for "the independence and functioning of the state courts." *Lui v. Comm'n, Adult Entm't Establishments*, 369 F.3d 319, 325–26 (3d Cir. 2004). Acknowledging the guidance from the U.S. Supreme Court that "[a]bstention rarely should be invoked," *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992), we have consistently indicated that *Younger* is to be employed only "in a few carefully defined situations." *Gwynedd Props.*, 970 F.2d at 1199. Accordingly, we require that each prong of the following three-prong test be satisfied to dismiss on the basis of *Younger* abstention: "(1) there are ongoing state

6

proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; [and] (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Lui*, 369 F.3d at 326 (citing *Gwynedd Props., Inc.*, 970 F.2d at 1200).

In the instant action, the District Court granted summary judgment against Zahl's constitutional claims on the basis that its 2008 decision barring Zahl's claims under *Younger* abstention continued to serve as a jurisdictional limit on these claims. (A7). Quoting its 2010 decision, which cited our decision in *Lui v. Commission, Adult Entertainment Establishments of the State of Delaware*, 369 F.3d 319, the District Court found that *Younger* abstention "operates as a dismissal with prejudice." (A8) (internal quotation marks omitted). The District Court characterized "[t]he preclusive effect of a *Younger* abstention" as effectuating a "dismissal [that] is permanent and cannot be circumvented by filing a new Complaint and naming new defendants once the *Zahl II* matter is resolved in state court." (A7). This overly broad reading of our *Younger* abstention precedent is incorrect.

We need not address whether the District Court's *Younger* abstention-based dismissal of the claims related to *Zahl II* was properly dismissed with prejudice, as Appellant challenges by citing our nonprecedential decision in *Eldakroury v. Attorney General of New Jersey*, 601 F. App'x 156 (2015). (Appellant's Br. 14–15). The extent to which *Eldakroury* distinguishes *Lui* is not an issue we need reach in the instant action because, on these facts, *Younger* abstention cannot be a basis for affirming the District

Court's grant of summary judgment.[4] As a threshold matter, *Younger* abstention cannot be invoked unless the three requirements set forth above are met. Here, the first requirement, that "there are ongoing state proceedings that are judicial in nature," is absent. *Lui*, 369 F.3d at 326 (citing *Gwynedd Props, Inc.*, 970 F.2s at 1200). Neither party contends, nor do we have reason to believe, that there are ongoing state court proceedings involving this matter. Thus, *Younger* abstention is not an appropriate ground for barring Zahl's constitutional claims.

Our holding in *Lui* did not establish as expansive a basis for *Younger* abstention in general as the lower court, or Appellees, maintain it does. *Lui* explicitly addressed *Younger* abstention in the context of a stay of a federal suit due to ongoing state court proceedings. 369 F.3d at 327.[5] The procedural posture of *Lui*, in which the appellant brought a § 1983 action during pending state criminal proceedings against him for violating various state laws, was central to our determination that "a stay of the federal suit pending resolution of the state suit meant that there would be no further litigation in the federal forum." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

---

[4] The inability of a *Younger* abstention-related dismissal to have preclusive effect on later cases is not at issue in this opinion, as the 2008 District Court decision only dismissed claims related to *Zahl II* based on *Younger*. In the case presently before us, those claims are barred by the claim preclusive effect of the state court decision, not the District Court's 2008 decision to abstain based on *Younger*.

[5] We note that the District Court omitted a critical word in its citation to the statement in *Lui* on which it relied in finding that *Younger* abstention continues to serve as a bar to the instant litigation. While in *Lui* we stated that "a *Younger* abstention *stay* requires a dismal with prejudice of the federal suit," the District Court, quoted its own March 2010 opinion, which omitted the word "stay." *Compare Lui v. Comm'n, Adult Entm't Establishments*, 369 F.3d 319, 327 (3d Cir. 2004), *with* (A-8) (emphasis added).

8

460 U.S. 1, 10 (1983)) (internal quotation marks omitted). Accordingly, in the context of a stay due to ongoing state court proceedings, *Younger* abstention dismissal prevents the plaintiff from simply amending the complaint and refiling while state court proceedings are still ongoing. As the U.S. Supreme Court indicated in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. at 10, the state court's judgment on the issue [becomes] res judicata . . . [and the] stay order amounts to a dismissal of the suit." *Lui*, 369 F.3d at 327.

Our decision in *Eldakroury* did not alter the three requirements necessary for *Younger* abstention. Both *Eldakroury* and *Lui* involved *Younger* abstention in the context of ongoing state court proceedings. These decisions recognized that a basic tenet of *Younger* abstention requires a plaintiff to wait until the state court issues a judgment in an ongoing state court proceeding before litigating the matter in federal court. *Lui*, 469 F.3d at 327; *Eldakroury*, 601 F. App'x at 158.

If the state judgment satisfies the elements of *res judicata*, then the plaintiff is precluded from bringing the claim in federal or any other court. *See Lui*, 469 F.3d at 327. If the elements of *res judicata* are not met, the plaintiff may be able to seek relief on the claim, as long as the claim is not presently pending before any court. Neither in *Lui*, nor in any subsequent case, have we held that *Younger* may continue to serve as a jurisdictional bar to litigation in federal district court *after* all state court proceedings have ceased. *Eldakroury*, 601 F. App'x at 158 (stating that, "without a merits-based decision, the dismissal of [the] federal case does not implicate claim preclusion or otherwise prevent [the plaintiff] from returning to federal court if his ongoing state

prosecution concludes without a resolution of his federal claims"). Such a holding could prevent litigants from raising claims and having their day in court in the event they are unable, for any number of reasons, to adequately do so in state court. Instead, once state court proceedings are complete, the first of the three prongs required for *Younger* abstention is no longer satisfied, and dismissal on this basis is no longer appropriate. *See Addiction Specialists, Inc.*, 411 F.3d at 408.

C.      *The District Court's 2008 Decision and Claim Preclusion*

The affirmative defense of claim preclusion, also called *res judicata*, "protect[s] litigants from the burden of relitigating an identical issue with the same party or his privy and . . . promot[es] judicial economy by preventing needless litigation." [6] *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (alterations in original) (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)) (internal quotation marks omitted). Three requirements must be satisfied for claim preclusion to apply. There must be "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Id.* (quoting *Post*, 501 F.3d at 169) (internal quotation marks omitted). Claim preclusion serves judicial economy and

---

[6] We have previously noted our preference for the term claim preclusion instead of *res judicata* per the distinction between the two drawn by the U.S. Supreme Court. As a broader term for preclusionary principles, *res judicata* "is often analyzed . . . to consist of two preclusion concepts: issue preclusion and claim preclusion." *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 n.4 (3d Cir. 1984) (alteration in original) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)) (internal quotation marks omitted). In this opinion we adhere to our practice of using claim preclusion "to refer to the preclusive effect of a judgment in foreclosing relitigation of the same causes of action," and issue preclusion to "refer[] to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id.*

finality by barring "not only claims that were brought in a previous action, but also claims that could have been brought." *Id.*

The District Court found that all of Zahl's claims were barred by claim preclusion. (A8–A16). Zahl challenged the presence of two of the elements necessary for claim preclusion: privity and identical claims. (A8). With respect to privity, the District Court found that the relationship between the 2006 case defendants and the instant defendants was "sufficiently close." (A10). Citing the well-established principle that advancing a new legal theory that could have been raised in the first suit does not defeat claim preclusion, the District Court rejected Zahl's argument that the claims were not identical. (A11).

The claims in the 2006 and instant complaints are identical for preclusion purposes because the constitutional and conspiracy claims Zahl presently raises either were asserted in the previous action, or could have been. *See Edmundson v. Boro. of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993) ("Claim preclusion . . . prohibits reexamination not only of matters actually decided in prior cases, but also those that the parties might have, but did not, assert in that action."). Zahl's § 1983 claims, based on violations of the First, Fifth and Fourteenth Amendments, federal and state RICO claims, and civil conspiracy claims, are identical to those alleged in the 2006 complaint. (A12–A14). Here, as the District Court accurately noted, "the additional facts that [Zahl] alleges in his 2013 Complaint do not save his pleadings from being duplicative." (A16).

Privity, which we have described as "merely a word used to say that the relationship between one who is a party on the record and another is close enough to

11

include that other within the *res judicata*," *Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004) (quoting *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990)) (internal quotation marks omitted), is satisfied here for the reasons the District Court set forth. (A9–A11). Adding in new defendants and claims does not prevent us from finding privity, as the connections between the parties and claims implicated in the 2006 complaint, and those in the instant complaint reveal that, save for one allegation, Zahl "had a full and fair opportunity to litigate his claims in the first action." (A11).

With the exception of the allegation of tampering with the 2008 initial decision issued by an Administrative Law Judge ("ALJ") in the New Jersey Office of Administrative Law ("OAL"), Zahl does not contend that there were any barriers which prevented him from bringing suit for RICO, civil conspiracy claims, or civil rights violations against any of the parties to the instant action in his 2006 suit. Simply presenting "new allegations" is not sufficient to overcome claim preclusion if the "thrust of the two complaints remain[s] practically identical." *Churchill v. Star Enters.*, 183 F.3d 184, 195 (3d Cir. 1999). Zahl now seeks redress for the same alleged wrongful conduct as asserted in his 2006 complaint. *Compare* (A35–A134), *with* (A545). Zahl's attempt to relitigate claims that have resulted in a final judgment fails under our claim preclusion jurisprudence.

The only event that post-dates Zahl's previous federal court complaints is the issuance of the ALJ's initial decision in *Zahl II*, which Zahl alleges involved tampering and supports his claims. The ALJ issued an initial decision on December 17, 2008, outside the standard 45-day timeline, which addressed the counts against Zahl for false

12

certification of records and improper billing codes. *In re Matter of the Suspension or Revocation of the License Issued to Kenneth Zahl, M.D., License No. MA56413*, 2010 WL 4054235, *2 (N.J. Super. Ct. App. Div. July 30, 2010) (per curiam), *cert. denied*, 13 A.3d 362 (N.J. 2011), *cert. denied*, 132 S. Ct. 100 (2011). The ALJ found that Zahl violated the consent order governing the stay of sanction pending appeal and ordered penalties, which the BME modified in its final written decision, issued on April 24, 2009.[7] *Id.* at *3. The BME otherwise accepted the ALJ's findings. *Id.*

On appeal before the New Jersey Superior Court, Appellate Division, Zahl asserted that the ALJ's initial decision had been tampered with, as evidenced by post-issuance alterations evident when the decision was posted on the Rutgers Law School website, as is common practice with NJ ALJ decisions. *Id.*; *see* (A93–A102). Zahl challenged the refusal of the OAG, the BME and the OAL to investigate the alterations as a violation of due process. *In re Zahl*, 2010 WL 4054235 at *3. The Chief ALJ denied Zahl's request to investigate the delay in the issuance of the initial decision as well as Zahl's concerns regarding tampering. *Id.* The Appellate Division affirmed the BME's decision on the underlying license revocation, as well as the decision not to investigate,

---

[7] The BME ordered the revocation of Zahl's license, instead of the six-month suspension in the ALJ's initial decision, and also increased the monetary penalty. *In re Matter of the Suspension or Revocation of the License Issued to Kenneth Zahl, M.D., License No. MA56413*, 2010 WL 4054235, *3 (N.J. Super. Ct. App. Div. July 30, 2010) (per curiam), *cert. denied*, 13 A.3d 362 (N.J. 2011), *cert. denied*, 132 S. Ct. 100 (2011). The BME stated it rendered these penalties "not only to punish for the numerous additional acts of dishonesty, but [also] to supply guidance to the regulated community and to the public as to the standards of conduct to be expected of a medical professional." *Id.* (internal quotation marks omitted).

13

rejecting Zahl's arguments and stating that "there was ample evidence by which the ALJ and the BME could find that Zahl violated the monitoring order." *Id.* at *5. The Appellate Division further stated, with respect to the allegation of tampering, along with other issues raised on appeal, that "the evidence submitted by Zahl was not worthy of belief." *Id.* The Appellate Division's decision was the final judgment in *Zahl II*, as both the Supreme Court of New Jersey and the U.S. Supreme Court denied Zahl's petitions for a writ of certiorari. *In re Zahl*, 132 S. Ct. 100 (2011); *In re Zahl*, 13 A.3d 362 (N.J. 2011). Zahl's brief before this Court focuses on the allegations of tampering with the 2008 ALJ initial decision. (Appellant's Br. 3–6, 13–17).

While we are able to affirm the majority of the District Court's analysis that Zahl's claims are barred because of the claim preclusive effect of its 2008 decision, we are unable to do so for Zahl's claims arising from the alleged tampering with the ALJ's decision. Under our precedent, claim preclusion may not serve as a bar to the assertion of claims based on facts which postdate the filing of the initial complaint. *Morgan v. Covington Twp.*, 648 F.3d 172, 178 (3d Cir. 2011), *as amended*, (Aug. 11, 2011). The date of the initial complaint, August 10, 2006, in which Zahl alleged civil rights violations under § 1983, federal and state RICO conspiracy statutes, and sought a temporary restraining order/ preliminary injunction, predated the ALJ decision by more than two years.

D.    *ALJ Decision Tampering Allegation Post-Dating 2006 Complaint*

Zahl's assertion that the Appellees tampered with the ALJ's initial decision does not present an independent claim. Rather, this allegation is tacked onto Zahl's complaint

14

as the most recent event in what Zahl alleges is a nearly sixteen-year conspiracy of vindictive prosecution on the part of both public and private actors alike. As such, while this allegation is not precluded by the District Court's 2008 decision per our holding in *Morgan v. Covington Township*, its addition does not prevent us from affirming the District Court's decision. This allegation does not alter the analysis set forth by the District Court that Zahl cannot continue to add new facts in an attempt to relitigate claims for which final judgments have been rendered. We are particularly compelled to determine that Zahl cannot assert this allegation in support of claims already litigated in federal court, as he has raised the tampering allegation before the New Jersey Superior Court, Appellate Division. The Appellate Division's conclusion that such allegations were "not worthy of belief" further militates against allowing further litigation. *In re Zahl*, 2010 WL 4054235 at *3, *5.

Zahl's present complaint advances seven counts based on an alleged conspiracy to deprive him of his medical license and multiple constitutional rights in response to his refutation of the license revocation and suspension proceedings, which began in 1999. While Zahl's appellate brief focuses on the allegation that Appellees tampered with the ALJ's initial decision, his presentation of this allegation comprises, at most, five pages of the 100-page complaint. *See* (A93–94, A96–A100). Zahl only references the tampering allegations directly in connection with one of the seven counts the complaint asserts. (*Id.*). In this count for "declaratory judgment under 28 U.S.C. § 2201 adjudicating violations of 42 U.S.C. § 1983 through defendant's conspiracy to violate § 1983," the allegation of tampering with the ALJ decision is included as only one of five allegations

15

demonstrating this count. (A125). At most, this allegation is provided as factual support for Zahl's instant claims. However, in the context of the present motion for summary judgment, Zahl, as the nonmoving party, has failed to demonstrate any evidentiary material that would permit him to carry his burden of proof on the asserted claims. *See Celotex Corp.*, 477 U.S. at 322–23.

New Jersey[8] employs a preclusionary doctrine, the entire controversy doctrine, whose contours are more stringent and broader than those of issue preclusion and claim preclusion under federal law. The entire controversy doctrine, codified in Rule 4:30A[9] of

---

[8] New Jersey preclusionary principles apply to our analysis, as we are determining the preclusionary effect of a New Jersey state court judgment. *Metro. Edison Co. v. Pa. Pub. Util. Comm'n*, 767 F.3d 335, 350–51 (3d Cir. 2014), *cert denied*, 135 S. Ct. 2372 (2015) (stating that the Full Faith and Credit statute, 28 U.S.C. § 1738, "has been interpreted by the Supreme Court to require a federal court to look to state law to determine the preclusive effect of a prior state judgment").

[9] Rule 4:30A, titled the "Entire Controversy Doctrine" states that
Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).
In 1997, per the Supreme Court of New Jersey's direction, the state's Civil Practice Committee considered revisions to Rule 4:30A. *Ricketti v. Barry*, 775 F.3d 611, 614 (3d Cir. 2015) (citing *Olds v. Donnelly*, 696 A.2d 633, 644–46 (N.J. 1997)). The next year, the Supreme Court of New Jersey removed the party-joinder requirement from Rule 4:30A and moved it to Rule 4:5-1(b)(2). *Id.* The effect of these changes is that "automatic preclusion of a successive suit [is no longer] the appropriate sanction in New Jersey for failure to join a defendant in an earlier action concerning the same subject matter." *Id.* In a recent diversity case before this Court involving the entire controversy doctrine, we remarked on the dispute, both between the parties and in caselaw, as to whether the doctrine still includes party joinder. *Id.* at 614 n.2. As we noted in that case, we need not now settle this debate, and only mention it to clarify that we do not invoke the doctrine on the basis that Zahl was required to join Appellees as defendants in the 2010 Appellate Division action, but rather that he was required to bring all claims related to the

New Jersey's Rules Governing Civil Practice in the Superior Court, is rooted in "the principle that the adjudication of a legal controversy should occur in one litigation in only one court." *Wadeer v. New Jersey Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015) (quoting *Highland Lakes Country Club & Cmty. Ass'n v. Nicastro*, 988 A.2d 90, 91 (N.J. 2009)) (internal quotation marks omitted). The doctrine, which does not require commonality of issues, precludes a party from later bringing claims that could have been joined in the earlier action. *Id.* When determining if the entire controversy doctrine should bar the assertion of a claim "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." *Id.* (quoting *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995)) (internal quotation marks omitted). Courts must also determine whether application of the entire controversy doctrine is fair, both "to the court system as a whole, as well as to the parties." *Id.*

To the extent that Zahl could have raised his instant claims involving the tampering allegation before the Appellate Division, the entire controversy doctrine precludes their relitigation. Zahl contends, without any citation to authority supporting this proposition, that he could not have raised his instant RICO and § 1983 claims before the Appellate Division because they lacked subject matter jurisdiction.[10] (Appellant's Br.

---

transaction at issue, which he was able, yet failed to do. *See id.*

[10] Zahl also contends, again without support or further explanation, that the statement that "'the evidence submitted by Zahl was not worthy of belief'" "refers only to the merits of the appeal and not to the claimed tampering." (Appellant's Br. 15) (quoting *In re Zahl*, 2010 4054235, at *5) (alteration in original). A plain reading of the Appellate Division opinion suggests that the court was referring to arguments Zahl raised on appeal, which included his due process claim based in part on the alleged tampering with the ALJ decision. *In re Zahl*, 2010 WL 4054235, at *3. Zahl further maintains that "[t]he Court

13). This argument serves as a tacit admission that the claims involving the tampering allegation existed at the time of the Appellate Division litigation, so we are not concerned that such claims were "unknown or unaccrued," as exceptions to the entire controversy doctrine. *See Wadeer*, 110 A.3d at 27 (quoting *DiTrolio*, 662 A.2d at 505); (Appellant's Br. 13).

As we acknowledged in *Lui*, "[s]tate courts are every bit as competent to deal with . . . claims . . . as are federal courts, and this, of course, includes the ability to address claims under both the State constitution and the Federal constitution." 369 F.3d at 326. There appears no jurisdictional bar that would have prevented Zahl from raising additional claims based on the allegation that the parties now before this Court tampered with the ALJ's computer. The administrative origin of *Zahl II* does not alter our analysis as New Jersey courts allow federal claims, such as § 1983 claims which Zahl now raises, to be handled in the "first-instance . . . on the administrative level, . . . rather than in a separate civil action that would mirror, in major part, the proofs in the administrative hearing." *Jones v. Dep't of Cmty. Affairs*, 930 A.2d 477, 480 (N.J. Super. Ct. App. Div. 2007).

The Appellate Division's 2010 decision acknowledged and responded to the arguments Zahl raised with respect to the OAG, BME and OAL's alleged misconduct.

---

stated that the evidence supported the Board's action, but the evidence also could have supported Zahl's position." (Appellant's Br. 15). This assertion is not only speculative, but also wholly unsupported by the record and a plain reading of the Appellate Division's decision. The Appellate Division explicitly rejected the evidence Zahl advanced in support of his position. *In re Zahl*, WL 4054235, at 5.

18

*See In re Zahl*, 2010 WL4054235, at \*3, \*5. Since any claims based on the alleged tampering arose directly from the ALJ's decision, which was at issue before the Appellate Division, the entire controversy doctrine requires that we focus on the parties involved and the transactions from which the tampering allegations arose. *Wadeer*, 110 A.3d at 27. We can easily conclude that the claims involving the tampering allegations in Zahl's instant complaint arise from the same transaction, or core set of facts, as those before the Appellate Division. Accordingly, the entire controversy doctrine requires that all claims arising from this core set of facts be "litigated and disposed of in a single comprehensive adjudication." *Id.* (quoting *DiTrolio*, 662 A.2d at 507).

The equitable nature of the entire controversy doctrine, the application of which is "flexible," directs us to look at the facts on a "case-by-case" basis. *In re Mullarkey*, 536 F.3d at 229. The unique facts of this ongoing litigation compel our determination that the parties named in the instant complaint are sufficiently in privity with those implicated in *Zahl II* to bar re-litigation. As we concluded in a nonprecedential opinion involving New Jersey preclusion principles, "the [e]ntire [c]ontroversy [d]octrine is broader than traditional *res judicata* principles." *Opdycke v. Stout*, 233 F. App'x 125, 129 n.6 (3d Cir. 2007). Acknowledging the broader application of the entire controversy doctrine, we determined that stricter privity rules involving claims against parties in their official and individual capacities did not apply. *Id.* In the instant actions, the facts demonstrate that application of the entire controversy doctrine serves the central purpose of fairness to the parties as all parties were known to Zahl at the time of the appeal in *Zahl II*.

Asking the District Court to now determine, based on the same evidence as was

19

before the New Jersey Superior Court Appellate Division, whether there was wrongdoing in the publication of the ALJ's decision on the part of the Appellees which should have been investigated, would require a federal court to question the final judgment of a state court. The Full Faith and Credit Clause of the Federal Constitution, codified in statute, requires that federal courts give "full faith and credit" to the judgments of state courts. U.S. Const. art. IV, § 1; 28 U.S.C. § 1738. Zahl's conclusory statement that he could not have raised claims and issues involving the tampering allegation before the Appellate Division is without support in the record, or federal and New Jersey state law. We have previously acknowledged the New Jersey Supreme Court's direction "that preclusion is a remedy of last resort." *Ricketti v. Barry*, 775 F.3d 611, 614 (3d Cir. 2015) (quoting *Olds v. Donnelly*, 696 A.2d 633, 644–46 (N.J. 1997)) (internal quotation marks omitted). We only invoke the entire controversy doctrine today based on the unique set of facts and extensive litigation in state court that has preceded our decision.

### III.

This instant action is the most recent in a long line of federal and state court actions brought by Zahl, which are the embodiment of repetitious litigation and the waste of judicial resources. Recognizing the highly unusual procedural posture and litigation history of this matter, we caution other courts against extending the rationale of this decision to other cases. We are confident that the central principle underlying preclusionary doctrines of fairness is served by this decision. Zahl has had a fair opportunity to litigate all the claims asserted in the present complaint, and has not advanced any equitable reason that would merit a determination to the contrary. For the

20

foregoing reasons, we will affirm the District Court's March 16, 2015 opinion and order granting summary judgment in favor of the Appellees.